UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

BASIL SEGGOS, as Commissioner of the New York State
Department of Environmental Conservation and Trustee of New
York State's Natural Resources, and the STATE OF NEW YORK,

                        Plaintiffs,

        -against-

THOMAS DATRE, JR.; CHRISTOPHER GRABE; 5 BROTHERS
FARMING CORP.; DAYTREE AT CORTLAND SQUARE INC.;
IEV TRUCKING CORP.; COD SERVICES CORP.; ALL ISLAND
MASONRY & CONCRETE, INC.; BUILDING DEV CORP.;
DIMYON DEVELOPMENT CORP.; NEW EMPIRE BUILDER
CORP.; CIPRIANO EXCAVATION INC.; TOUCHSTONE
HOMES LLC; SAMS RENT AND CONSTRUCTION; SAM'S
RENT, INC.; NEW YORK MAJOR CONSTRUCTION INC.;
EAST COAST DRILLING NY INC.; TRITON CONSTRUCTION
COMPANY, LLC; SUKRAM AND SONS LTD.; M & Y
DEVELOPERS INC.; "JOHN DOE"; ATRIA BUILDERS, LLC;
WOORI CONSTRUCTION INC.; PLUS K CONSTRUCTION
INC.; NY FINEST ENTERPRISES INC.;       MONACO
CONSTRUCTION CORP.; ALEF CONSTRUCTION INC.; 158
FRANKLIN AVE. LLC; LUCIANO'S CONSTRUCTION, INC.;
ILE CONSTRUCTION GROUP, INC.; EAST END MATERIALS,
INC.;    SPARROW    CONSTRUCTION    CORP.;    CIANO
CONCRETE CORP.; FREEDOM CITY CONTRACTING CORP.;
and TOTAL STRUCTURE SERVICES INC.,

                        Defendants.
_____

**COMPLAINT**

**CIV. NO. 2:17-CV-2684**

       Plaintiffs Basil Seggos ("Seggos"), as Commissioner of the New York State Department

of Environmental Conservation ("DEC") and Trustee of New York State's Natural Resources, and

the State of New York (collectively, "New York"), by their attorney Eric T. Schneiderman,

Attorney General of the State of New York, as and for their complaint, allege as follows, based on

information and belief:

**NATURE OF THE ACTION**

1.      By their nature, construction projects generate significant construction waste.  In the New York City metropolitan area, this waste includes urban soil that typically contains substances that the U.S. Environmental Protection Agency and DEC have deemed hazardous, sometimes commingled with construction and demolition debris that includes building components that contain hazardous substances (together, "construction waste").  From mid-2013 through spring 2014, tens of thousands of tons of construction waste containing hazardous substances were transported from multiple construction sites in the New York City metropolitan area and dumped at Roberto Clemente Park (the "Park"), a public park in Brentwood, Long Island.  As a result of the dumping, the Park closed on May 5, 2014, for investigation, testing, and removal of the construction waste and restoration of the Park.  As of the filing of this lawsuit, the Park remains closed to the public.  Prior to its closing, the Park was a primary and popular location for residents of Brentwood and other members of the public to engage in a wide range of outdoor activities, and the Park's closure has deprived them of their use and enjoyment of the Park.

2.      New York brings this action under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 ("CERCLA"), as amended, New York Real Property Actions and Proceedings Law § 841, and New York common law, against contractors who arranged for the disposal of construction waste from their construction sites, and the waste brokers and haulers with whom they dealt.  New York seeks to recover natural resource and other damages caused by the release of hazardous substances at the Park and its resulting closure, including the costs of assessing the natural resource damages.

## JURISDICTION AND VENUE

3.      This Court has exclusive jurisdiction over the First Claim for Relief, which arises under the laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 2201 and 42 U.S.C. §§ 9607

and 9613.  The Court has supplemental jurisdiction, under 28 U.S.C. § 1367, over the Second

Claim for Relief, which is based on New York Real Property Actions and Proceedings Law § 841

and New York common law, and the Third Claim for Relief, which is based on New York common

law, and both of which arise out of a common nucleus of operative facts shared with the First

Claim for Relief.

4.     Venue is proper in this District pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C.

§ 1391(b) because the release of hazardous substances that gives rise to this action occurred in the

Park, which is located within this District.

## THE PARTIES

### I.     PLAINTIFFS

5.     Plaintiff Seggos, as Commissioner of DEC, is the designated Trustee of New

York's Natural Resources under CERCLA, 42 U.S.C. § 9607(f)(2)(B).  Seggos brings this action

under CERCLA to recover natural resource damages relating to the closure of the Park.

6.     Plaintiff State of New York, as a body politic and a sovereign entity, brings this

action on behalf of itself and as parens patriae, trustee, guardian, and representative on behalf of

all residents and citizens of the State of New York, particularly those individuals who live in the

vicinity of the Park.

7.     The State of New York brings this action under CERCLA, New York Real Property

Actions and Proceedings Law § 841, and New York common law to recover damages relating to

the closure of the Park as a result of the release of hazardous substances.

### II.     OPERATOR/TRANSPORTER DEFENDANTS

8.     Thomas Datre, Jr. ("Datre") is the principal of 5 Brothers Farming Corp. and a

resident of Suffolk County, New York.

3

9.      Christopher Grabe ("Grabe") is a resident of Coram, New York.

10.     5 Brothers Farming Corp. ("5 Brothers") is a domestic business corporation with a registered address of 1442 Clauverie Road, Middleburg, New York, 12112.

11.     Daytree at Cortland Square Inc. ("Daytree") is a domestic business corporation with a registered address of 2150 5th Ave., Ste C, Ronkonkoma, New York, 11779.

12.     Datre, Grabe, Daytree, and 5 Brothers (together, the "Datres"), transported construction waste that contained hazardous substances to the Park from construction sites in the New York City metropolitan area.  At the Park, the Datres managed, directed, or otherwise conducted operations relating to the disposal of the construction waste containing hazardous substances and made decisions about compliance with environmental laws and regulations.

III.    **ARRANGER DEFENDANTS**

        a.      **Broker Defendants**

13.     IEV Trucking Corp. ("IEV") is a domestic business corporation organized under the laws of the State of New York with a registered address of 4 Oneill Avenue, Bay Shore, New York.  IEV acted as a broker for the removal and disposal of construction waste from construction sites in the New York City metropolitan area.  IEV arranged by contract or otherwise for that construction waste containing hazardous substances to be disposed by the Datres, who transported the waste to the Park.

14.     COD Services Corp. ("COD") is a domestic business corporation organized under the laws of the State of New York with a registered address of 21 Claridge Circle, Manhasset, New York.  COD acted as a broker for the removal and disposal of construction waste containing hazardous substances from construction sites in the New York City metropolitan area.  COD arranged by contract or otherwise for that construction waste to be disposed by the Datres, who

4

transported the waste to the Park.

### b.     96 Wythe Avenue Defendants

15.     All Island Masonry & Concrete, Inc. ("All Island") is a domestic business corporation organized under the laws of the State of New York with a registered address of 16 Wanda Terrace, Farmingville, New York.  All Island was the excavation subcontractor at 96 Wythe Avenue, 59 North 10th Street, and/or 61 North 10th Street in Brooklyn, New York (Block 2295; Lots 21, 28, 29) ("96 Wythe Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

16.     Building Dev Corp. ("Building Dev") is a domestic business corporation organized under the laws of the State of New York with a registered address of 199 Lee Ave., Ste 952, Brooklyn, New York.  Building Dev was a general contractor for construction at 96 Wythe Ave. Building Dev and/or a second general contractor, Dimyon Development Corp., arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

17.     Dimyon Development Corp. ("Dimyon") is a domestic business corporation organized under the laws of the State of New York with a registered address of 199 Lee Avenue, Suite 952, Brooklyn, New York.  Dimyon replaced Building Dev as the general contractor for construction at 96 Wythe Ave. Dimyon and/or Building Dev arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### c.     65 Park Place Defendant

18.     New Empire Builder Corp. ("New Empire") is a domestic business corporation

5

organized under the laws of the State of New York with a registered address of 4920 3rd Avenue, Brooklyn, New York.  New Empire was the contractor for general construction and excavation services at 65 Park Place, Brooklyn, New York (Block 938; Lot 7503) ("65 Park Pl."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

        **d.**        **32 Sinclair Drive Defendants**

19.     Cipriano Excavation Inc. ("Cipriano") is a domestic business corporation organized under the laws of the State of New York with a registered address of 77 Roslyn Avenue, P.O. Box 450, Sea Cliff, New York.  Cipriano was the excavation subcontractor for construction at 32 Sinclair Drive (Block 150; Lot 17) ("32 Sinclair Dr.") in Kings Point, New York, and arranged by contract or otherwise for waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

20.     Touchstone Homes LLC is a domestic limited liability company organized under the laws of the State of New York with a registered address of 770 Middleneck Road, Great Neck, New York.  Touchstone Homes LLC ("Touchstone") was the general contractor for construction at 32 Sinclair Drive, and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

        **e.**        **115-121 Liberty Avenue Defendants**

21.     Sams Rent and Construction ("Sams") is an unregistered entity with an address of 71-13 60th Lane, Ridgewood, New York.  Sams is affiliated with Sam's Rent, Inc., a domestic business corporation organized under the laws of the State of New York with a registered address of 188-16 Woodhull Ave., Hollis, New York (together, "Sam's Construction").  Sam's Construction was the excavation subcontractor for construction at 115-121 Liberty Avenue,

Brooklyn, New York (Block 3676; Lot 30, f/k/a Lots 30, 32 and 34) ("115-121 Liberty Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

22.     New York Major Construction Inc. ("NY Major Construction") is a domestic business corporation organized under the laws of the State of New York with a registered address of 1736 55th Street, Brooklyn, New York.  NY Major Construction was the general contractor for construction at 115-121 Liberty Ave., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### f.     35-39 Cooper Square Defendants

23.     East Coast Drilling NY Inc. ("ECD") is a domestic business corporation organized under the laws of the State of New York with a registered address of 266 Broadway, Suite 401, Brooklyn, New York.  ECD was the excavation subcontractor for construction at 35-39 Cooper Square, New York, New York (Block 461; Lots 6, 7 and 8) ("35-39 Cooper Sq."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

24.     Triton Construction Company, LLC ("Triton") is a domestic limited liability company organized under the laws of the State of New York with a registered address of 30 East 33rd Street, 11th Floor, New York, New York.  Triton was the general contractor for construction at 35-39 Cooper Sq., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### g.     585-587 Central Avenue Defendants

25.     Sukram and Sons Ltd. ("Sukram") is a dissolved domestic business corporation

organized under the laws of the State of New York with a registered address of P.O. Box 277, Copiague, New York.  Sukram was the excavation subcontractor for construction at 585-587 Central Avenue, Brooklyn, New York (Block 3423; Lots 3, 4, 5, 6, 7, 8, 9, 10, 110[sic], 12) ("585-587 Central Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

26.     M & Y Developers Inc. ("M & Y") is a domestic business corporation organized under the laws of the State of New York with a registered address of 713 Bedford Avenue, Brooklyn, New York.  M & Y was the general contractor for construction at 585-587 Central Ave., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### h.     636 Louisiana Avenue Defendants

27.     "John Doe" was the excavation subcontractor for construction at 636 Louisiana Avenue, Brooklyn, New York (Block 8235; Lot 140) ("636 Louisiana Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

28.     Atria Builders, LLC ("Atria Builders") is a domestic limited liability company organized under the laws of the State of New York with a registered address of 158-13 72nd Ave., Flushing, New York.  Atria Builders was the general contractor for construction at 636 Louisiana Ave., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### i.     209-43 45th Road Defendants

29.     Woori Construction Inc. ("Woori") is a domestic business corporation organized under the laws of the State of New York with a registered address of 152-36 Roosevelt Ave.,

Flushing, New York.  Woori was a contractor for construction at 209-43 45th Road, a/k/a 210-04 to 210-08 Northern Boulevard Queens, New York (Block 7309; Lot 21) ("209-43 45th Rd."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

30.     Plus K Construction Inc. ("Plus K") is a domestic business corporation organized under the laws of the State of New York with a registered address of 162-19 Depot Road, Suite 202, Flushing, New York.  Plus K was a contractor for construction at 209-43 45th Rd., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

j.      **158 Franklin Avenue Defendants**

31.     NY Finest Enterprises Inc. ("NY Finest") is a dissolved domestic business corporation organized under the laws of the State of New York with a registered address of 8502 7th Ave., Brooklyn, New York.   NY Finest was a contractor for construction at 158 Franklin Avenue, Brooklyn, New York (Block 1912; Lot 35) ("158 Franklin Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

32.     Monaco Construction Corp. ("Monaco") is a domestic business corporation organized under the laws of the State of New York with a registered address of 7403 3rd Avenue, Brooklyn, New York.  Monaco was a contractor for construction at 158 Franklin Ave., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

33.     Alef Construction Inc. ("Alef") is a domestic business corporation organized under the laws of the State of New York with a registered address of 4111 18th Avenue, Brooklyn, New

9

York.  Alef was a contractor for construction at 158 Franklin Ave.  Alef arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

34.     158 Franklin Ave. LLC ("158 Franklin LLC") is a domestic limited liability company with a registered address of 5310 17th Avenue, Brooklyn, New York.  158 Franklin LLC was a contractor for construction at 158 Franklin Ave.  158 Franklin LLC arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### k.     194 Stuyvesant Avenue Defendants

35.     Luciano's Construction, Inc. ("Luciano") is a dissolved domestic business corporation organized under the laws of the State of New York with a registered address of 35-05 105th St., Apt. 3A, Corona, New York.  Luciano was a contractor for construction at 194 Stuyvesant Avenue, Brooklyn, New York (Block 1630; Lot 45) ("194 Stuyvesant Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

36.     ILE Construction Group, Inc. ("ILE Construction") is a domestic business corporation organized under the laws of the State of New York with a registered address of 101 Broadway, Suite 500, Brooklyn, New York.  ILE Construction was a contractor for construction at 194 Stuyvesant Ave., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### l.     199 Mt. Eden Parkway Defendants

37.     East End Materials, Inc. ("East End") is a domestic business corporation organized under the laws of the State of New York with a registered address of P.O. Box 533, Wading River,

New York.  East End was the excavation subcontractor for construction at 199 Mt. Eden Parkway, Bronx, New York (Block 2824; Lot 19) ("199 Mt. Eden Pkwy."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

38.     Sparrow Construction Corp. ("Sparrow") is a domestic business corporation organized under the laws of the State of New York with a registered address of 3743 White Plains Rd., Bronx, New York.  Sparrow was the general contractor for construction at 199 Mt. Eden Pkwy and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### m.     516 Classon Avenue Defendants

39.     Ciano Concrete Corp. ("Ciano") is a domestic business corporation organized under the laws of the State of New York with a registered address of 35-05 105th St., Apt. 3A, Corona, New York.  Moises Cardenas is the Chief Executive Officer of both Luciano and Ciano.

40.     Luciano and/or Ciano was a contractor for construction at 516 Classon Avenue, Brooklyn, New York (Block 1993; Lot 33, f/k/a Lots 33 and 34) ("516 Classon Ave."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

41.     ILE Construction was a general contractor for construction at 516 Classon Ave., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

### n.     867-869 45th Street Defendants

42.     Freedom City Contracting Corp. ("Freedom City") is a dissolved domestic business corporation organized under the laws of the State of New York with a registered address of 1

Lawrence Road, Kings Park, New York.  Freedom City was a contractor for demolition at 867-869 45th Street, Brooklyn, New York (Block 742; Lots 48, 49; Condo Lot 7501) ("867-869 45th St."), and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

43.     Total Structure Services Inc. ("Total Structure") is a domestic business corporation organized under the laws of the State of New York with a registered address at 133-49 Roosevelt Ave., Flushing, New York.  Total Structure was a contractor for demolition at 867-869 45th St., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park.

## LEGAL BACKGROUND

## CERCLA

44.     CERCLA provides that, when there is a release or a threatened release of hazardous substances into the environment from a facility, certain categories of persons are liable to the States for "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release."  42 U.S.C. § 9607(a).

45.     "Hazardous substances" are defined in 42 U.S.C. § 9601(14) to include substances that EPA has designated as hazardous under 42 U.S.C. § 9602.  The substances that EPA has designated as hazardous are listed in 40 C.F.R. § 302.4.

46.     A "release" includes "dumping, or disposing into the environment."  *Id.* § 9601(22). "Environment" includes land surface.  *Id.* § 9601(8).

47.     A "facility" includes "any site or area where a hazardous substance has been deposited, stored, disposed or, or placed, or otherwise come to be located."  *Id.* § 9601(9).

48.     "Natural resources" include "land" that is "held in trust by" a state. *Id.* § 9601(16).

49.     Under New York law, all dedicated parks, including the Park, are held in trust for the people of New York. *Friends of Van Cortlandt Park v. City of New York*, 95 N.Y.2d 623, 631 (2001).

50.     The persons liable for natural resource damages under 42 U.S.C. § 9607(a) include (1) operators of a facility at the time of disposal of hazardous substances; (2) "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility"; and (3) "any person who accepts or accepted any hazardous substances for transport" to facilities or sites "selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance." "Persons" includes corporations. 42 U.S.C. § 9601(21).

## New York Public Nuisance Law

51.     An action for public nuisance may be brought under New York common law and New York Real Property Actions and Proceedings Law § 841 for New York's recovery of natural resource damages where there is injury to a resource held in the public trust. A public nuisance is a condition that offends, interferes with, or causes damage to the public in the exercise of rights common to all, or interferes with the use by the public of a public place, in a manner such as to, among other things, endanger or injure the property, health, safety, or comfort of a considerable number of persons. Persons who cause or contribute to the creation or maintenance of a public nuisance are responsible for its abatement and for all costs, damages, and expenses arising from the public nuisance.

## New York Negligence Law

52.     An action for negligence may also be brought under New York common law for plaintiffs' recovery of natural resource damages where there is injury to a resource held in the public trust.  In New York, the elements of a claim for negligence are duty, breach, causation, and damages.   A tortfeasor's duty is determined by balancing various factors, including the wrongfulness of a defendant's action or inaction and an injured person's reasonable expectation of the duty of care owed.  The breach of a duty renders a tortfeasor liable for all injuries that are the proximate result of the tort.  Where multiple tortfeasors cause a single injury which is not reasonably capable of division, the tortfeasors may be held jointly and severally liable for the harm.

**Regulation of Construction Wastes Pursuant to 6 N.Y.C.R.R. Part 360**

53.     Under the Environmental Conservation Law and regulations of the State of New York, the disposal of construction and demolition ("C&D") debris or soils is unlawful except at authorized facilities or locations or at exempt locations.

54.     Recognizable concrete, rock, brick, asphalt and soils that have not been in contact with spills from petroleum products, hazardous waste, or industrial waste may be disposed at registered receiving facilities.   C&D debris, together with other materials authorized for acceptance, may be accepted at transfer stations pursuant to 6 N.Y.C.R.R. § 360-16, or at C&D landfills pursuant to 6 N.Y.C.R.R. § 360-7.

55.     DEC may approve an exemption for the use of clean fill and soils as grade adjustment fill.  6 N.Y.C.R.R. § 360-8.6.  To obtain such an exemption, the owner of a proposed receiving site must, at least thirty days before starting construction, notify DEC and the clerk of the town in which the project is located of the intention to receive and use such material for grade adjustment purposes, together with the exact nature, source, and volume of that waste, the time period over which the activity will occur, the contractor's identity, the exact location of the project,

and future use of the property, among other things.  The owner must also represent that the material is not contaminated with spills of a petroleum product, hazardous waste or industrial waste, and that it is not commingled with any other solid waste.

## The New York City Business Integrity Commission

56.     The New York City Business Integrity Commission ("BIC") is a regulatory and law enforcement agency that oversees the sanitation industry and public wholesale markets in New York City.

57.     Under its charter, BIC licenses and registers businesses in the private sanitation industry to remove, and broker for the removal of, certain waste from commercial establishments in New York City.  For BIC licensing and registration purposes, BIC regulates "trade waste," which includes C&D debris.  New York City Administrative Code ("N.Y.C. Code"), Title 16-A, Chpt. 1, § 16-501(f).

58.     Before BIC grants a license or registration, BIC conducts background investigations of the applicant business and its principals' good character, honesty, and integrity. BIC also conducts criminal investigations of the businesses it regulates.

59.     It is unlawful for a business to collect, remove, or dispose of trade waste in New York City without first obtaining a license from BIC.  N.Y.C. Code, Title 16-A, Chpt. 1, § 16-505(a).  BIC, however, may issue a registration for such activity where a business that seeks to operate for the sole purposes of removing trade waste resulting from building demolition, construction, alteration, or excavation has applied for a license exemption.  Rules of the City of New York ("R.C.N.Y."), §§ 2-03(a) and (d); N.Y.C. Code, Title 16-A, Chpt. 1, §§ 16-505(a) and (b).  A registration issued by BIC is valid for a period of two years. 17 R.C.N.Y. § 2-07(a); N.Y.C. Code, § 16-506.

60.     Upon issuance of a registration to a registrant exempt from the licensing requirements, BIC will issue two license plates for each vehicle that will transport trade waste under the registration and for which a fee has been paid.  17 R.C.N.Y. § 7-03.  A registrant may not permit a vehicle to be used in the course of collecting, removing or disposing of waste unless that vehicle that has been identified by its license plate and is covered by the registration and a fee has been paid for it.  17 R.C.N.Y. § 7-03.

61.     Any person or entity who, for a fee, operates as a "trade waste broker," *i.e.*, to broker transactions between a commercial establishment (such as a construction site) and a trade waste business that is required to be licensed or registered, must first obtain a BIC registration.  17 R.C.N.Y. §§ 1-01, 6-01.

## FACTUAL ALLEGATIONS

### Hazardous Substances in New York City Metropolitan Area Construction Waste

62.     Construction waste from the New York City metropolitan area typically contains hazardous substances.

63.     Specifically, the majority of soil in New York City contains hazardous substances, including semi-volatile organic compounds ("SVOCs"), metals, and pesticides.  Commonly found metals include lead, chromium, nickel, copper, zinc, and cadmium.  Likely sources of lead contamination are lead paint from the exterior of buildings, leaded gasoline, lead plumbing and lead arsenate pesticides.  Waste incineration and coal and oil combustion have also contributed to the presence of these SVOCs and metals in urban soils.  In addition, a site where demolition of pre-1978 structures occurred will likely contain contaminated soils because use of lead paint was not banned until 1978.

64.     Studies of urban gardens have shown that urban soil frequently contains contaminants such as SVOCs and heavy metals. A study of New York City gardens conducted in 2014 included metals analysis of 564 soil samples from fifty-four New York City community gardens and found at least one sample exceeding health-based guidance values in seventy percent of gardens.  The New York City Department of Health ("DOH") warns urban gardeners that soil in New York City may contain chemical contaminants.  DOH indicates that contaminants in New York City soils include lead and other metals, SVOCs, and pesticides.  DOH warns that these chemicals "may be present at high levels and may pose a risk to human health."  In particular, the likelihood that urban garden soils will be contaminated with some or all of the above mentioned contaminants are higher when the site is located in or next to an area that has: "painted structures, landfills, gas stations, auto body repair shops, dry cleaners, busy roadways, bridges, elevated rail lines, power plants or other manufacturing or industrial facilities."

65.     Additionally, C&D debris from construction waste in the New York City metropolitan area will typically contain hazardous substances unless materials containing those substances have been removed before a building's demolition.  Those materials include lead piping, lead paint, and asbestos-containing materials.

66.     Environmental site assessments are typically performed in connection with the transferring, financing, or re-financing of property.

**The Park**

67.     The Park, formerly known as Timberline Park, is located at 400 Broadway in Brentwood, New York, and is a dedicated park owned by the Town of Islip ("Town").

68.     The Park is located in an area that DEC has identified as a "potential environmental justice area."  Pursuant to DEC Commissioner Policy 29, Environmental Justice and Permitting

17

(issued March 19, 2003), DEC defines such an area as "a minority or low-income community that may bear a disproportionate share of the negative environmental consequences resulting from industrial, municipal, or commercial operations or the execution of federal, state, local, and tribal programs and policies."

69.     The Park covers approximately thirty acres.  It is located in a residential area of Brentwood and has open green space, swimming pool facilities, playgrounds, baseball fields, basketball courts, and soccer fields.  The Park also has a "recharge basin."

70.     Before the Park was closed on May 5, 2014, the Park was used frequently by the public for outdoor recreational activities.  Basketball games and tournaments were scheduled there.  It was a gathering place for families.  Children played on the playgrounds.  The Town sponsored movie nights at the Park that were attended by several hundred people.

71.     The soccer fields had deteriorated by 2013 due to heavy use.

72.     The swimming pool had been closed nearly a year when the Park was closed on May 5, 2014, but the Town had received a grant to rehabilitate it, and had announced an intention to reopen it by summer 2014.

**The Disposal of Hazardous Substances at the Park**

73.     The events that led to dumping of hazardous substances in the Park began in or about April 2013, when members of a local church, Iglesia De Jesucristo Palabra Miel (the "Church") asked the Town for permission to rehabilitate the soccer fields through placement of topsoil and grass seed on the existing surface.

74.     Two Town officials granted the Church permission to begin work in or around May 2013 at the Church's sole cost and expense.  In May 2013, Church volunteers deposited topsoil and seed on the soccer fields.

18

75.     In the period between May and July 2013, Datre and Grabe devised a scheme to unlawfully dispose construction waste at the Park.

76.     Between August 2013 and April 2014, the Datres disposed several thousands of tons of construction waste in the Park.  The construction waste was initially dumped in the soccer fields, but the dumping was later expanded to include the recharge basin.

77.     In January 2014, parents and others in the community reported to the Town that brick, cement, rebar, and other debris were present in the recharge basin, making it dangerous for children to sled on the slopes of the basin.

78.      On January 24 and 25, 2014, the Datres removed some of the construction waste from the recharge basin, leaving about 3,000 cubic yards.

79.     In March and April 2014, the Datres disposed additional construction waste in the Park.

80.     The construction waste that was dumped in the Park, which included rebar, wire, broken glass, tile and chunks of brick and wood, had been transported by the Datres from construction sites in the New York City metropolitan area.  Statements made by Datre and Grabe acknowledge that they delivered such material from sites in New York City to dump in the Park.  IEV and COD acted as brokers between contractors or subcontractors at those sites and the Datres.

81.     The Park is not an authorized Part 360 receiving facility nor an approved exempt facility pursuant to 6 N.Y.C.R.R. § 360-8.6.  No construction waste from sites in New York City, whether containing hazardous substances or not, could have been lawfully disposed at the Park.

82.     According to statements by Datre and Grabe, the invoices sent by the Datres to IEV and C.O.D for their disposal of the construction waste delivered to the Park did not include any cost for lawful disposal.

83.     General contractors and subcontractors at construction sites in New York City are familiar or should be familiar with BIC's licensing and registration requirements.

84.     With the exception of 5 Brothers, the Datres were not licensed, exempted from the license requirement, or otherwise registered with BIC during 2013 and 2014 to engage into the collection, removal or disposal of trade waste from commercial establishments in New York City. As a result, most of the trucks used by the Datres during 2013 and 2014 for transporting construction waste from construction sites in New York City could not have been identified by license plates issued by BIC to indicate that the trucks were being lawfully operated under a license or registration issued by BIC.  The absence of those license plates gave notice to the arranger defendants that the vehicles being operated by the Datres were not operating lawfully.

85.     Neither IEV nor COD was registered with BIC as an approved trade waste broker in 2013 or 2014.  The failure of IEV and COD to be registered with BIC provided notice to site contractors that IEV and COD were not lawfully operating as trade waste brokers.

**The Investigation and Cleanup of the Construction Waste**

86.     In April 2014, the Office of the Suffolk County District Attorney commenced a criminal investigation into the unlawful dumping of construction waste at the Park.

87.     On May 5, 2014, the Park was closed to investigate the unlawful dumping.

88.     On May 8 and 9, 2014, Enviroscience Consultants, Inc. ("Enviroscience"), on behalf of the Suffolk County District Attorney, took thirty-four soil samples from the soccer fields and recharge basin at the Park.  Those samples revealed the presence of hazardous substances, including SVOCs (benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, and benzo(k)fluoranthene, indeno(1,2,3-cd) pyrene, and chrysene), metals (barium, chromium, copper,

lead, nickel, selenium and zinc), and pesticides (4,4'-DDD, 4,4'-DDE, 4,4'-DDT and dieldrin), in amounts in excess of DEC's "soil cleanup objectives" for the remediation of contaminated sites.

89.     The Enviroscience investigation also noted the presence of asbestos-containing materials in both the soccer fields and recharge basin.

90.     EPA has designated benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, benzo(k)fluoranthene, indeno(1,2,3-cd) pyrene, chrysene, barium, chromium, copper, lead, nickel, selenium, zinc, 4,4'-DDD, 4,4'-DDE, 4,4'-DDT, dieldrin, and asbestos as hazardous substances. 40 C.F.R. § 302.4.

91.      Lead can affect almost every organ and system in the human body.  The main target for lead toxicity is the nervous system, both in adults and children.  Lead may also cause weakness in fingers, wrists, or ankles. Lead exposure also causes small increases in blood pressure, particularly in middle-aged and older people and can cause anemia. Children are particularly vulnerable to the effects of exposure to lead.  EPA has found that exposure to lead can cause lower IQ, hyperactivity and other serious health problems in children.  The U.S. Department of Health and Human Services ("DHHS") has determined that lead and lead compounds are reasonably anticipated to be human carcinogens and the EPA has determined that lead is a probable human carcinogen.  Exposure to other metals, such as barium, chromium, copper, nickel, selenium, and zinc, can cause a variety of health effects including allergic reactions, skin ulcers, gastrointestinal problems, breathing problems, damage to liver and kidneys, and in some instances, death.

92.     EPA has determined that benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, benzo(k)fluoranthene, indeno(1,2,3-c,d) pyrene and chrysene are probable human carcinogens.

93.     The pesticides DDD, DDE, and DDT are distributed to all body tissues and stored

21

in fat tissue.  Exposure to these pesticides can lead to disorders of the nervous system.

94.     Long-term exposure to the insecticide dieldrin has also been shown to cause nervous system disorders, convulsions, and may even lead to death.  Health effects may also occur after longer periods of exposure to lower levels of dieldrin.

95.     DHHS, the World Health Organization and the EPA have determined that asbestos is a human carcinogen.

96.     After finding that hazardous substances had been disposed at the Park, the Town took action to remove those substances from the Park.  The Town employed Enviroscience Consultants, Inc. to prepare a "Material Removal Work Plan" and to submit that work plan to DEC for review and approval prior to the commencement of the work.  DEC approved that work plan on January 13, 2015.

97.     Beginning in June 2015, a contractor engaged by the Town and acting under the supervision of DEC, removed all materials deposited above the original elevation of the soccer field and recharge basin.  Approximately 39,000 tons of construction waste were removed from the Park.

98.     On September 29, 2015, after the completion of the removal and end-point sampling to confirm that the hazardous substances had been removed, the Town's consultants submitted a "Removal Action Report" to DEC.  DEC then directed the Town to prepare for its review a "Site Management and Restoration Plan" for the Park, which included soccer field restoration, groundwater monitoring, and other measures.  DEC approved that plan on August 12, 2016.

99.     As a result of the Suffolk County District Attorney's criminal investigation, on March 30, 2016, Datre pled guilty to one felony and one misdemeanor in connection with the

dumping of construction waste at the Park.  Grabe and 5 Brothers each pled guilty to one felony in connection with the dumping.  Additionally, a Town official pled guilty to a felony and a misdemeanor in connection with the dumping.  The court agreed to reduce the felony to a misdemeanor if the official cooperated with the Town.  A town employee also pled guilty to a violation in connection with the dumping.

100.    On April 27, 2017, Datre was sentenced to one year in jail.  Grabe was sentenced to thirty days in jail, five months of community service, and five years of probation.  5 Brothers was sentenced to pay a fine of $600,000.

101.    The Town is in the process of restoring the Park and anticipates reopening it in phases beginning in the summer of 2017.  The Town will renovate the pool this year and anticipates reopening it in 2018.

102.    The Town incurred response costs to clean up the hazardous substances in the Park. The State of New York has also incurred response costs, including time expended in the remedial project review and approval process, meeting with Town and Suffolk County District Attorney officials, and assessing data in order to oversee the cleanup consistent with its regulatory obligations.

103.    The closure of the Park caused an injury and loss of New York's natural resources by depriving residents of Brentwood and other members of the public of access to and use of the Park.

## 96 Wythe Avenue, Brooklyn

104.    Approximately forty times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 96 Wythe Ave. to the Park, where they disposed of it.

105.   96 Wythe Acquisition LLC ("Wythe LLC") purchased 96 Wythe Ave. in June 2012.

106.   In the 1970s, several buildings on the property were demolished and a warehouse was erected that remains there.  Between the 1970s and Wythe LLC's purchase in June 2012, the property was used for scrap metal sorting, recycling, and auto repairs.

107.   After Wythe LLC purchased the property, it entered into a general contract or other arrangement with Building Dev to construct a restaurant on the property.  Building Dev subcontracted or otherwise arranged with All Island to excavate the property in preparation for constructing the building.  That subcontract or other arrangement required All Island to dispose construction waste from the property.

108.   Building Dev assigned its contract with All Island to Dimyon.

109.   Dimyon and/or Building Dev subcontracted or otherwise arranged with All Island to excavate the property in preparation for constructing the restaurant.  That subcontract or arrangement required All Island to dispose construction waste from the property.

110.   Dimyon, Building Dev and/or All Island identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that All Island would arrange with IEV to dispose.

111.   All Island arranged with IEV, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

112.   IEV arranged with the Datres to dispose that construction waste.

113.   Statements by Grabe confirm that the Datres moved a large amount of construction debris from this site and that it constituted a big job for All Island.

114.   Before Wythe LLC purchased the property, it commissioned two environmental

24

reports—a "Phase I Environmental Site Assessment" and a "Phase II Environmental Site Assessment"—to assess potential environmental conditions at the property.  Those reports revealed the presence of hazardous substances at the property, including:  benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, chrysene, indeno(1,2,3-cd)pyrene, anthracene, fluoranthene, phenanthrene, pyrene, barium, chromium, nickel, lead, and zinc.

115.    Dimyon and/or Building Dev were provided the two environmental reports that had been prepared before Wythe LLC purchased the property.

116.    Dimyon, Building Dev, All Island, IEV, and the Datres knew or should have known that the construction waste from 96 Wythe Ave. that was disposed in the Park contained hazardous substances.

## 65 Park Place, Brooklyn

117.    At least thirty-five times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 65 Park Pl. to the Park, where they disposed of it.

118.    61 Park Place LLC ("61 Park LLC") purchased 65 Park Pl. in Brooklyn, New York in June 2012.

119.    The property at 65 Park Pl. was previously used as a church and, later, as a facility for senior housing.

120.    After 61 Park LLC purchased the property, it entered into a general contract or another arrangement with New Empire to construct a five-story, seventeen-unit residential and condominium building with commercial/retail use on the property.

121.    New Empire identified the construction waste that would be disposed and determined the means of disposal.

122.    New Empire arranged with IEV, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

123.    IEV arranged with the Datres to dispose that construction waste.

124.    New Empire, IEV, and the Datres knew or should have known that the construction waste from 65 Park Pl. contained hazardous substances.

### 32 Sinclair Drive, Kings Point

125.    At least twenty-two times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 32 Sinclair Dr. to the Park, where they disposed of it.

126.    John Khani and his wife Susan Khani (the "Khanis") purchased 32 Sinclair Dr. in January 2011.

127.    At the time of the Khanis' purchase, there was a house on the property.

128.    After the Khanis purchased the property, they entered into a general contract or other arrangement with Touchstone for the demolition of the pre-existing house and the construction of a new house on the property.  Touchstone subcontracted or otherwise arranged with Cipriano to excavate the property in preparation for Touchstone's construction of the new home.  That subcontract or arrangement required Cipriano to lawfully dispose waste, including ash, from the property.

129.    Large quantities of ash were found during excavation of the property.  Ash is a product of combustion and is regulated as either a hazardous waste, as defined in 6 N.Y.C.R.R. Part 370, or a solid waste as defined in 6 N.Y.C.R.R. Part 360, and must be disposed properly. Ash is likely to contain hazardous substances including heavy metals and SVOCs.  As discussed above, exposure to metals and SVOCs can cause serious health effects.

26

130.   Cipriano arranged with COD, one of the two brokers that worked with the Datres, to dispose waste, including ash, from the property.

131.   COD arranged with the Datres to dispose that waste, including ash.

132.   Touchstone, Cipriano, COD and the Datres knew or should have known that the waste from 32 Sinclair Dr. that was disposed in the Park contained hazardous substances.

### 115-121 Liberty Avenue, Brooklyn

133.   At least thirteen times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 115-121 Liberty Ave. to the Park, where they disposed of it.

134.   MD Kohn Realty LLC ("MD Kohn LLC") purchased 115-121 Liberty Ave. in June 2009.

135.   The property at 115-121 Liberty Ave. was previously used as a lot for storage and warehousing purposes.

136.   After MD Kohn LLC purchased the property, it entered into a general contract or other arrangement with NY Major Construction to construct a building for commercial use on the property.  NY Major Construction subcontracted or otherwise arranged with Sams to excavate the property in preparation for constructing the building.  That subcontract or arrangement required Sam's Construction to dispose construction waste from the property.

137.   NY Major Construction and/or Sam's Construction identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that Sam's Construction would arrange with IEV to dispose.

138.   Sam's Construction arranged with IEV, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

27

139.    IEV arranged with the Datres to dispose that construction waste.

140.    NY Major Construction, Sam's Construction, IEV, and the Datres knew or should have known that the construction waste from 115-121 Liberty Ave. contained hazardous substances.

### 35-39 Cooper Square, Manhattan

141.    At least twelve times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 35-39 Cooper Sq. to the Park, where they disposed of it.

142.    Cooper and 6th Property LLC ("Cooper LLC") purchased the property at 35-39 Cooper Sq. in October 2010.

143.    The property was developed in the early 1900s as a machine shop and iron works facility, and was later used as a cigar shop and cafeteria.  Afterwards, the property was converted to residential and commercial/retail use, including as a bar with an abutting beer garden and apartments above.

144.    After Cooper LLC purchased the property, it entered into a general contract or another arrangement with Triton to construct a student dormitory on the property.

145.    Triton subcontracted or otherwise arranged with ECD to excavate the property in preparation for constructing the dormitory.  That subcontract or arrangement required ECD to dispose construction waste from the property.

146.    Triton and/or ECD identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that ECD would arrange with COD to dispose.

147.    ECD arranged with COD, one of the two brokers that worked with the Datres, to

28

dispose the construction waste from the property that was disposed in the Park.

148.    COD arranged with the Datres to dispose that construction waste.

149.    Before Cooper LLC purchased the property, it commissioned two environmental reports—a "Hydro-Tech Phase I Assessment" in 2011 and an "Emteque Soil and Water Sampling Report" in 2012—to assess potential environmental conditions at the property.  Those reports revealed the presence of hazardous substances at the property, including:  barium, chromium, copper, lead, zinc, fluoranthene, and asbestos.

150.    Triton was provided the two environmental reports that had been prepared before Cooper LLC purchased the property.

151.    Triton, ECD, COD, and the Datres knew or should have known that the construction waste from 35-39 Cooper Sq. contained hazardous substances.

### 585-587 Central Avenue, Brooklyn

152.    At least twelve times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 585-587 Central Ave. to the Park, where they disposed of it.

153.    Central Bushwick LLC ("Central Bushwick") purchased 585-587 Central Ave. in May 2013.

154.    Residential and retail buildings occupied the property from as early as or around 1907 to the early 1980s.  In or around 1951, the westernmost part of the property was a clothing manufacturer.  In the early 1980s, the buildings on the property were demolished.  From around 1995 until 2013, the property was used as parking lot for a church that owned the property before selling it to Central Bushwick.

155.    After Central Bushwick purchased the property, it entered into a general contract

29

or other arrangement with M & Y to construct an apartment building on the property.

156.    M & Y subcontracted or otherwise arranged with Sukram to excavate the property in preparation for constructing the restaurant.  That subcontract or arrangement required Sukram to dispose construction waste from the property.

157.    M & Y and/or Sukram identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that Sukram would arrange with COD to dispose.

158.    Sukram arranged with COD, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

159.    COD arranged with the Datres to dispose that construction waste.

160.    M & Y, Sukram, COD, and the Datres knew or should have known that the construction waste from 585-587 Central Ave. that was disposed in the Park contained hazardous substances.

**636 Louisiana Avenue, Brooklyn**

161.    At least thirteen times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 636 Louisiana Ave. to the Park, where they disposed of it.

162.    Louisiana Purchase LLC purchased 636 Louisiana Ave. in April 2012.

163.    After Louisiana Purchase LLC purchased the property, it entered into a general contract or other arrangement with Atria Builders to construct a multi-story assisted living facility at the property.

164.    Atria Builders subcontracted or otherwise arranged with "John Doe" to excavate the property in preparation for constructing the assisted living facility.  That subcontract or

arrangement required "John Doe" to dispose construction waste from the property.

165.     Atria Builders and/or "John Doe" identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that Atria Builders would arrange with COD to dispose.

166.     Atria Builders and/or "John Doe" arranged with COD, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

167.     COD arranged with the Datres to dispose that construction waste.

168.     Atria Builders, "John Doe," COD, and the Datres knew or should have known that the construction waste from 636 Louisiana Ave. contained hazardous substances.

### 209-43 45th Road, Queens

169.     At least seven times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 209-43 45th Rd. to the Park, where they disposed of it.

170.     Stahav Realty Corp. ("Stahav") purchased 209-43 45th Rd. in January 1993.

171.     After Stahav purchased the property, Plus K obtained a New York City Department of Buildings permit to enlarge a building at 209-43 45th Rd.

172.     Plus K subcontracted or otherwise arranged with Woori to excavate the property in preparation for constructing the apartment building.  That subcontract or arrangement required Woori to dispose construction waste from the property.

173.     Plus K and/or Woori identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that Woori would arrange with COD to dispose.

174. Plus K and/or Woori arranged with COD, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

175. COD arranged with the Datres to dispose that construction waste.

176. Plus K, Woori, COD, and the Datres knew or should have known that the construction waste from 209-43 45th Rd. that was disposed in the Park contained hazardous substances.

## 158 Franklin Avenue, Brooklyn

177. At least six times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 158 Franklin Ave. to the Park, where they disposed of it.

178. 4118 18th Avenue, LLC ("18th Avenue LLC") purchased 158 Franklin Ave. in November 2010.

179. In the 1970's, a building existed on the property that was used for the dying and drying of knit goods. Prior to 18th Avenue LLC's purchase, the house was demolished. At the time of purchase, it was a vacant lot.

180. After 18th Avenue LLC purchased the property, it entered into a general contract or other arrangement with Alef to construct an apartment building on the property.

181. Alef and/or 158 Franklin LLC subcontracted or otherwise arranged with Monaco to excavate the property in preparation for constructing the apartment building. That subcontract or arrangement required Monaco to dispose construction waste from the property.

182. Monaco further subcontracted or otherwise arranged with NY Finest to excavate the property.

183. Alef and/or 158 Franklin LLC and/or Monaco and/or NY Finest identified the

32

construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that Monaco and/or NY Finest would arrange with COD to dispose.

184.    Monaco and/or NY Finest arranged with COD, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

185.    COD arranged with the Datres to dispose that construction waste.

186.    Alef, 158 Franklin LLC, Monaco, NY Finest, COD , and the Datres knew or should have known that the construction waste from 158 Franklin Ave, that was disposed in the Park contained hazardous substances.

## 194 Stuyvesant Avenue, Brooklyn

187.    At least two times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 194 Stuyvesant Ave. to the Park, where they disposed of it.

188.    192 Stuy Inc. ("Stuy Inc.") purchased 194 Stuyvesant Ave. in December 2011.

189.    In June 2013, Stuy Inc. obtained a permit from New York City Department of Buildings to construct a new four-story multiple dwelling building at 194 Stuyvesant Ave.

190.    192 Stuy Inc. entered into a general contract or other arrangement with ILE Construction to construct residential condominium units on the property.  ILE Construction subcontracted or otherwise arranged with Luciano to excavate the property in preparation for constructing the residential condominium units.  That subcontract or arrangement required Luciano to dispose construction waste from the property.

191.    ILE Construction and/or Luciano identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that

Luciano would arrange with IEV to dispose.

192.     Luciano arranged with IEV, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

193.     IEV arranged with the Datres to dispose that construction waste.

194.     ILE Construction, Luciano, IEV, and the Datres knew or should have known that the construction waste from 194 Stuyvesant Ave. contained hazardous substances.

### 199 Mt. Eden Parkway, Bronx

195.     At least four times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 199 Mt. Eden Pkwy to the Park, where they disposed of it.

196.     Bronx Health Access IPA, Inc. ("Bronx Health") purchased 199 Mt. Eden Pkwy in August 1981.

197.     Nearly twenty years after Bronx Health purchased the property, it entered into a general contract or other arrangement with Sparrow to construct a 60,000 square foot health and wellness center offering various medical services on the property.

198.     Sparrow subcontracted or otherwise arranged with East End to excavate the property in preparation for constructing the medical center.  That subcontract or arrangement required East End to dispose construction waste from the property.

199.     Sparrow and/or East End identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that East End would arrange with either directly with the Datres, or with COD and/or IEV, to dispose.

200.     Sparrow and/or East End arranged directly with the Datres, or with COD and/or IEV, one of the two brokers that worked with the Datres, to dispose the construction waste from

the property that was disposed in the Park.

201.    Sparrow, East End, and COD and/or IEV, and the Datres knew or should have known that the construction waste from 199 Mt. Eden Pkwy that was disposed in the Park contained hazardous substances.

### 516 Classon Avenue, Brooklyn

202.    At least three times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 516 Classon Ave. to the Park, where they disposed of it.

203.    The Classon in Clinton LLC ("Classon LLC") purchased 516 Classon Ave. in January 2013.

204.    In the 1950's, the property housed a three-story building.  In the early 2000's, the property was a vacant lot used to store automobiles, automobile parts and a boat, and for automobile repair.

205.    After Classon LLC purchased the property, it entered into a general contract or other arrangement with ILE Construction to construct residential condominium units on the property.

206.    ILE Construction subcontracted or otherwise arranged with Ciano to excavate the property in preparation for constructing the residential condominium units.  That subcontract or arrangement required Ciano to dispose construction waste from the property.

207.    ILE Construction and/or Luciano and/or Ciano identified the construction waste that would be disposed and determined the means of disposal, including identifying the construction waste that Luciano and/or Ciano would arrange with IEV to dispose.

208.    Luciano and/or Ciano arranged with IEV, one of the two brokers that worked with

the Datres, to dispose the construction waste from the property that was disposed in the Park.

209.   IEV arranged with the Datres to dispose that construction waste.

210.   ILE Construction, Luciano and/or Ciano, IEV, and the Datres knew or should have known that the construction waste from 516 Classon Ave. hazardous substances.

### 867-869 45th Street, Brooklyn

211.   At least two times between August 2013 and April 2014, the Datres transported construction waste containing hazardous substances from 867-869 45th St. to the Park, where they disposed of it.

212.   Chen 867 Realty LLC ("Chen") purchased 867-869 45th St. in February 2013.

213.   In the 1980s, the property was a community residence for developmentally disabled people.

214.   After Chen purchased the property, it entered into a general contract or other arrangement with Freedom City and/or Total Structure to demolish the pre-existing residential structure on the property.

215.   Freedom City and/or Total Structure identified the construction waste that would be disposed and determined the means of disposal.

216.   Freedom City and/or Total Structure arranged with COD, one of the two brokers that worked with the Datres, to dispose the construction waste from the property that was disposed in the Park.

217.   COD arranged with the Datres to dispose that construction waste.

218.   Freedom City and/or Total Structure, COD, and the Datres knew or should have known that the construction waste from 867-869 45th St. that was disposed in the Park contained hazardous substances.

36

## FIRST CLAIM FOR RELIEF
### <u>CERCLA</u>

219.     New York hereby incorporates by reference the allegations contained in Paragraphs 1 through 218 as if fully set forth herein.

220.     The Park is a "facility" as that term is defined in 42 U.S.C. § 9601(9).

221.     There have been "releases" of "hazardous substances," as those terms are defined in 42 U.S.C. §§ 9601(14) and (22), into the environment at the Park.

222.     Among the hazardous substances that were released into the environment at the Park are SVOCs, metals, pesticides, and asbestos.

223.     SVOCs, metals, pesticides, and asbestos contaminated the "environment" within the meaning of 42 U.S.C. § 9601(8).

224.     42 U.S.C. § 9607(a) provides that persons liable for natural resource damages include (1) operators of a facility at the time of disposal of hazardous substances; (2) "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility";  and (3) "any person who accepts or accepted any hazardous substances for transport" to facilities or sites "selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance."

225.     Defendants are "persons" within the meaning of 42 U.S.C. § 9601(21).

226.     All the defendants, except the Datres, by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of construction waste containing hazardous substances that were disposed at the Park.

37

227.     The Datres accepted construction waste containing hazardous substances for transport, and selected the Park as the disposal facility.

228.     The Datres managed, directed, or otherwise conducted operations at the Park and other facilities at the Park, including operations specifically related to the disposal of construction waste containing hazardous substances and made decisions about compliance with environmental laws and regulations when construction waste containing hazardous substances were disposed at the Park.

229.     The release of hazardous substances at the Park has caused "injury to, destruction of, or loss of natural resources" within the meaning of 42 U.S.C. § 9607(a).

230.     Pursuant to 42 U.S.C. §§ 9607(a) and 9613(g), defendants are strictly and jointly and severally liable for New York's natural resource damages, including the lost use of the Park during the time it was closed, and the costs of assessing the injury to, destruction of, or loss of the natural resources, including the costs of an expert to make such an assessment.

**SECOND CLAIM FOR RELIEF**
**PUBLIC NUISANCE**

231.     New York hereby incorporates by reference the allegations contained in Paragraphs 1 through 218 as if fully set forth herein.

232.     The disposal of construction waste containing hazardous substances at the Park, and their presence in the environment, including in soil at the Park, constitutes a public nuisance which endangers public health and safety, damages the natural resources constituting the Park, and interferes with the public's use and enjoyment of the Park.

233.     Defendants participated in the creation and/or maintenance of this public nuisance at the Park.

234.    Defendants are strictly and jointly and severally liable to New York under the common law of public nuisance and New York Real Property Actions and Proceedings Law § 841 for all costs, damages, and expenses arising from the public nuisance, including the value of the public's lost use of the Park during the time that it was closed due to the nuisance, and the costs of assessing the injury to, destruction of, or loss of the natural resources, including the costs of an expert to make such an assessment.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE

235.    New York hereby incorporates by reference the allegations contained in Paragraphs 1 through 218 as if fully set forth herein.

236.    Defendants had and have a duty to the public not to endanger its health or safety, injure its natural resources, and interfere with its use of its natural resources.  Defendants' duty required them to ascertain whether the material that was disposed at the Park contained hazardous substances.

237.    Defendants negligently caused or allowed hazardous substances to be disposed at the Park, thereby breaching defendants' duty and endangering the public's health and safety, injuring the natural resources in the Park, and interfering with the public's use of the natural resources in the Park.

238.    As a proximate result of defendants' breach of their duty, the public has suffered an injury for which damages should be awarded, including the value of the public's lost use of the Park during the time that it was closed due to the disposal of hazardous substances, and the costs of assessing the injury to, destruction of, or loss of the natural resources, including the costs of an expert to make such an assessment.  Defendants are jointly and severally liable for such sums.

## **PRAYER FOR RELIEF**

WHEREFORE, New York requests judgment in its favor and against defendants upon each claim and requests that this Honorable Court enter judgment against defendants as follows:

1.      Declaring defendants to be strictly and jointly and severally, liable to New York under CERCLA for, and awarding to New York, damages for injury to, destruction of, and loss of New York's natural resources, including the costs of assessing the injury to, destruction of, or loss of the natural resources, including the costs of an expert to make such an assessment;

2.      Declaring defendants to be strictly and jointly and severally, liable to New York for the public nuisance at the Park, and awarding to New York damages for injury to, destruction of, and loss of New York's natural resources, including the costs of assessing the injury to, destruction of, or loss of the natural resources, including the costs of an expert to make such an assessment;

3.      Declaring defendants to be jointly and severally liable to New York for negligence, and awarding to New York damages for injury to the public, including the value of the public's loss of New York's natural resources, including the costs of assessing the injury to, destruction of, and loss of the natural resources, including the costs of an expert to make such an assessment; and

4.      Ordering such other and further relief, in law or in equity, as the Court deems just and proper.

Dated: New York, New York
        May 4, 2017

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Plaintiffs


By:  /s/Rebecca Fromer
     Rebecca Fromer
     Mihir A. Desai
     Matthew J. Sinkman
     Assistant Attorneys General
     Environmental Protection Bureau
     120 Broadway, 26th Floor
     New York, New York 10271
     212-416-8132

41