```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
BASIL SEGGOS, Commissioner of the New York State  :
Department of Environmental Conservation and Trustee  :   CASE NO. 2:17-cv-02684-SJF-ARL
of New York State's Natural Resources, and the      :
STATE OF NEW YORK,                                  :
                                                    :
          Plaintiffs,                               :
                                                    :
                    -against-                       :
                                                    :
THOMAS DATRE, JR. et al.,                           :
                                                    :
          Defendants.                               :
------------------------------------------------------------------- X
```

**MEMORANDUM OF LAW IN SUPPORT OF
THE STATE'S MOTION REQUESTING ENTRY OF A
CONSENT DECREE SETTLING THE STATE'S CASE AGAINST
DEFENDANT TRITON CONSTRUCTION COMPANY, LLC**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

STATUTORY BACKGROUND ..............................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND................................................................4

STANDARD OF REVIEW .......................................................................................................6

ARGUMENT.............................................................................................................................7

      I.     The Court Should Enter the Proposed Consent Decree Because it is Fair, Reasonable, and Consistent with the Purposes of CERCLA ...................................7

      II.    The Objections to the Settlement are Meritless ........................................................8

CONCLUSION........................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**                                                                                                                                          **PAGE(S)**

*55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*,
    332 F. Supp. 2d 525 (E.D.N.Y. 2004) ...............................................................................7, 10

*Alaska Sport Fishing Ass'n v. Exxon Corp.*,
    34 F.3d 769 (9th Cir. 1994) ..................................................................................................2

*Arizona v. City of Tucson*,
    761 F.3d 1005 (9th Cir. 2014) ....................................................................................... 6, 8-9

*B.F. Goodrich Co. v. Betkoski*,
    99 F.3d 505 (2d Cir. 1996) ....................................................................................................3

*City of Bangor v. Citizens Communications Co.*,
    532 F.3d 70 (1st Cir. 2008) ........................................................................................ *passim*

*In re Cuyahoga Equipment Corp.*,
    980 F.2d 110 (2d Cir. 1992) ....................................................................................... 6, 11-12

*New York v. City of Johnstown*,
    Nos. 87-CV-636, 87-CV-637,
    1998 U.S. Dist. Lexis 5037 (N.D.N.Y. Apr. 2, 1998) ...........................................................7

*New York v. Panex Industries, Inc.*,
    No. 94-CV-0400E(H), 2000 U.S. Dist. Lexis 7913 (W.D.N.Y. June 6, 2000) ............... *passim*

*New York v. Pneumo Abex LLC*,
    No. 07-CV-794S, 2008 U.S. Dist. Lexis 16135 (W.D.N.Y. Mar. 3, 2008) .............................7

*New York v. Solvent Chem. Co.*,
    453 F. App'x 42 (2d Cir. 2011) .............................................................................................2

*State of New York v. Next Millennium Realty, LLC*,
    No. 2:06-cv-01133 (E.D.N.Y. July 27, 2015),
    Order Entering Consent Decree, ECF No. 441 ...............................................................7, 9, 10

*State of New York v. Next Millennium Realty, LLC*,
    160 F. Supp. 3d 485 (E.D.N.Y. 2016) ...................................................................................2

*United States v. Cannons Engineering Corp.*,
    899 F.2d 79 (1st Cir. 1990) ........................................................................................ *passim*

*United States v. Davis*,
    11 F. Supp. 2d 183 (D. R.I. 1998) ........................................................................................9

*United States v. Davis*,
  261 F.3d 1 (1st Cir. 2001) ..................................................................................................9

**FEDERAL STATUTES, RULES, & REGULATIONS**

42 U.S.C.
  § 9601(9) ............................................................................................................................3
  § 9601(14) ..........................................................................................................................3
  § 9601(22) ..........................................................................................................................3
  § 9607(a) ............................................................................................................................2
  § 9607(a)(2) ....................................................................................................................3, 4
  § 9607(a)(3) ........................................................................................................................4
  § 9607(a)(4) ....................................................................................................................3, 4
  § 9607(f)(1) ....................................................................................................................1, 2
  § 9607(f)(2)(B) ...................................................................................................................2
  § 9613(f) .............................................................................................................................6
  § 9613(f)(1) ..................................................................................................................3, 12
  § 9613(f)(2) ........................................................................................................................3
  § 9613(g)(1) .......................................................................................................................2

43 C.F.R. § 11.23(e)(5) ...........................................................................................................2

**PRELIMINARY STATEMENT**

Plaintiffs Basil Seggos, as Commissioner of the New York State Department of Environmental Conservation and Trustee of New York State's Natural Resources, and the State of New York (together, the "State") seek to recover natural resource damages against thirty-three defendants in connection with the release of hazardous substances at Roberto Clemente Park in Brentwood, New York (the "Park"). The State's claims are grounded in the Comprehensive Environment Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 ("CERCLA") and New York common law and seek damages for the public's lost use of the Park during the three years it was closed for a cleanup. As required by CERCLA, any natural resource damages recovered by the State must be used "only to restore, replace, or acquire the equivalent of such natural resources by the State." 42 § U.S.C. § 9607(f)(1).

The State has entered into a proposed consent decree resolving its claims against one defendant, Triton Construction Company, LLC ("Triton"), for $100,131.00. *See* Consent Decree, ECF No. 344-1. For purposes of settlement the State has estimated its total damages at $3 million, and its settlement with Triton is based on the volume of waste brought to the Park from the construction site where Triton worked as a general contractor. The State requests that Court approve the decree because it is fair, reasonable, and serves the goals of CERCLA.

The objections to the settlement made by five defendants are meritless. First, the estimated volume of waste attributable to a defendant is a well-recognized basis for a settlement under CERCLA. Second, CERCLA does not require discovery to be conducted before parties settle. Third, even if the settlement with Triton operates to the disadvantage of the non-settling defendants, that is a well-recognized result of CERCLA's framework. And the State is of course willing to settle with other defendants.

## **STATUTORY BACKGROUND**

Under CERCLA, the State may sue responsible parties for both the costs of cleanup actions and for "damages for injury to, destruction of, or loss of natural resources" that result from a "release" of "hazardous substances" into the "environment" from a "facility."  42 U.S.C. § 9607(a); *see State of New York v. Next Millennium Realty, LLC*, 160 F. Supp. 3d 485, 505, 521 (E.D.N.Y. 2016).  Thus CERCLA makes responsible parties liable for the costs of actions to remove or remediate hazardous substances ("response actions") and for natural resource damages for injuries to natural resources that are not remedied by response actions.  *See* 43 C.F.R. § 11.23(e)(5).  The State in this case seeks only natural resource damages.  Compl., ECF No. 1, at p. 40.

Natural resource damages are typically assessed after a response action is selected or completed.  *See* 42 U.S.C. § 9613(g)(1).  Natural resource damages may include damages for the lost use of a natural resource, including recreational uses, during the time when hazardous substances are being cleaned up.  *See, e.g.*, *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 772 (9th Cir. 1994).  As discussed above, any natural resource damages recovered by the State must be used "only to restore, replace, or acquire the equivalent of such natural resources by the State." 42 § U.S.C. § 9607(f)(1).

CERCLA provides that "the authorized representative of any State, shall act on behalf of the public as trustee of such natural resources to recover for such damages." 42 U.S.C. § 9607(f)(1).  As the Commissioner of the New York State Department of Environmental Conservation, plaintiff Basil Seggos is the Trustee of New York State's Natural Resources and the "authorized representative" to bring such an action on behalf of the People of the State of New York.  *See id.* § 9607(f)(2)(B).

CERCLA defines a "release" to include any "dumping, or disposing into the environment." 42 U.S.C. § 9601(22). "Hazardous substances" are defined to include substances that EPA has designated as hazardous. 42 U.S.C. § 9601(14). A "facility" includes "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9).

Responsible parties under CERCLA include:

- "Operator[s]" of a facility;

- "[A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility"; and

- "[A]ny person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance."

42 U.S.C. §§ 9607(a)(2)-(4).

Under CERCLA, a private party that is sued by a government or another private party may bring a claim against other parties to contribute to those costs. 42 U.S.C. § 9613(f)(1). To encourage settlement, CERCLA provides that, when a private party settles its liability with the United States or a State, "[it] shall not be liable for claims for contribution regarding matters addressed in the settlement." *Id.* § 9613(f)(2); *see also B.F. Goodrich Co. v. Betkoski*, 99 F.3d 505, 527 (2d Cir. 1996). To further encourage settlement, CERCLA also provides that the non-settling defendants' liability will be reduced only by the amount of the settlement rather than by the pro rata share attributable to the settling parties. 42 U.S.C. § 9613(f)(2). "In other words, non-settling defendants may bear disproportionate liability for their acts." *Betkoski*, 99 F.3d at 527.

3

## FACTUAL AND PROCEDURAL BACKGROUND

The State's complaint alleges as follows. Between August 2013 and April 2014, several thousand tons of construction waste were transported from thirteen construction sites in the New York City metropolitan area and disposed in the thirty-acre Park. Compl. ¶¶ 69, 76-80, 97. The waste contained hazardous substances, including asbestos, pesticides, and heavy metals. *Id.* ¶¶ 88-89. The Park was a popular location for residents in the community and other members of the public to engage in a wide range of activities, including basketball, soccer, swimming, and widely-attended movie nights. *Id.* ¶¶ 69-70. The Town of Islip, in which the Park in Brentwood is located, closed the Park in May 2014 for approximately three years for cleanup activities, depriving the public of use of the Park during this time. *Id.* ¶¶ 87, 101.

In May 2017, the State sued three categories of defendants responsible for the disposal of construction waste in the Park. First, the State sued twenty-eight contractors and sub-contractors who were responsible for construction at the construction sites from which the construction waste had been transported to the Park. The State alleges that the contractors and sub-contractors are "arrangers" under CERCLA, 42 U.S.C. § 9607(a)(3). The State also sued two waste brokers that arranged for transportation of the waste to the Park as arrangers. The State's suit also names four waste haulers that transported the waste to the Park and disposed of it there. The State alleges that these defendants are liable as "transporters" and "operators" under CERCLA, *id.* §§ 9607(a)(2), (4).

In July and August of 2017, eight defendants moved to dismiss and for judgment on the pleadings (collectively, the "motions"). ECF Nos. 49, 51, 98, 172, 180, 181. The State opposed the motions in an omnibus memorandum of law. ECF No. 273. In November and December 2017, the Court appointed a Special Master to issue a Report and Recommendation regarding

4

how the Court should rule on the motions. ECF Nos. 294, 304. The Special Master issued a Report and Recommendation in March 2018. ECF No. 313. The Court has stayed all discovery pending a decision on the motions. *See* ECF No. 244.

As discussed above, for the purposes of settlement the State has estimated its total damages at $3 million. That sum is based on the estimated number of trips to the Park that local residents would have made during the time it was closed for cleanup multiplied by the monetary value of each trip, as discussed in a 2010 economic report by the Trust for Public Land entitled *The Economic Benefits and Fiscal Impact of Parks and Open Space in Nassau and Suffolk Counties* (the "Report"). *See* Declaration of Matthew J. Sinkman in Support of the State's Motion, dated November 20, 2018 ("Sinkman Decl.") ¶ 2 and Exhibit A. The Report estimates the monetary value of trips to parks like the Park based on an economic methodology developed by the U.S. Army Corps of Engineers. That methodology takes into account factors such as the type and quality of facilities in a park, the distance and accessibility of similar facilities, and the aesthetics of a facility. *Id.* ¶ 3 and Exhibit B.

The State has entered into a proposed consent decree with Triton for $100,131. Triton, an "arranger" defendant, was the general contractor at a construction site in Manhattan from which waste was transported to the Park. *Id.* ¶ 144. The complaint alleges that at least twelve truckloads of waste were brought to the Park from Triton's construction site, out of a total of at least 171 truckloads of construction waste brought to the Park from all the construction sites discussed in the complaint. *Compare id.* ¶ 141, *with id.* ¶¶ 104, 117, 125, 133, 141, 152, 161, 169, 177, 187, 195, 202, 211. The amount of Triton's settlement payment, as a percentage of the State's total estimated damages of $3 million for purposes of settlement, correlates to about six

5

out of 171 truckloads of waste.[1]  In September 2018, the State submitted a letter requesting that the Court enter the decree.  *See* ECF Nos. 344, 344-1 ¶ 9 (providing that payment is due within thirty days of entry of the decree).

Five defendants—four contractors (Building Dev Corp.; Dimyon Development Corp.; New York Major Construction Inc.; and M & Y Developers Inc.) and a waste broker (COD Services Corp.)—filed letters objecting to the proposed settlement.  *See* ECF Nos. 346-48.  The remaining twenty-seven defendants have not taken a position on the settlement.  The State responded to the objections by letter in October 2018.  *See* ECF No. 350.  At a status conference on October 16, 2018, the Court requested that the State file a motion seeking approval of the proposed consent decree.

## STANDARD OF REVIEW

As mentioned above, CERCLA authorizes judicial approval of consent decrees entered into between states and private parties.  *See* 42 U.S.C. § 9613(f); *New York v. Solvent Chem. Co.*, 453 F. App'x 42, 45 (2d Cir. 2011); *City of Bangor v. Citizens Communications Co.*, 532 F.3d 70, 90 (1st Cir. 2008).  Courts reviewing CERCLA settlements "have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context."  *B.F. Goodrich Co.*, 99 F.3d at 527; *accord In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 119 (2d Cir. 1992) (noting that CERCLA "aimed to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation").  A court should approve a consent decree so long as the settlement is fair, reasonable, and consistent with the purposes of CERCLA.  *Id.* at 118-19; *Arizona v. City of Tucson*, 761 F.3d 1005, 1011-12 (9th Cir. 2014); *City of Bangor*, 532

---

[1] In the State's initial letter to the Court requesting entry of the consent decree, the State noted that the settlement correlated to the total number of truckloads of waste brought from Triton's construction site to the Park.  *See* Sinkman Decl. ¶ 12.  In a second letter to the Court, the State pointed out that it subsequently realized that the settlement in fact corresponds to less than that total number of truckloads.  *Id.*

F.3d at 86; *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 85 (1st Cir. 1990); *New York v. Pneumo Abex LLC*, No. 07-CV-794S, 2008 U.S. Dist. Lexis 16135, at *2 (W.D.N.Y. Mar. 3, 2008); *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 332 F. Supp. 2d 525, 529-30 (E.D.N.Y. 2004); *State of New York v. Next Millennium Realty, LLC*, No. 2:06-cv-01133 (E.D.N.Y. July 27, 2015), Order Entering Consent Decree at pp. 14-18, ECF No. 441 (the "Order").

## ARGUMENT

### I. The Court Should Enter the Proposed Consent Decree Because it is Fair, Reasonable, and Consistent with the Purposes of CERCLA

The State submits that the Court should enter the proposed consent decree because it is fair, reasonable, and consistent with the purposes of CERCLA. Fairness refers to both the procedure through which the parties agreed to a consent decree and to the substance of the terms in a decree. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Pneumo Abex*, 2008 U.S. Dist. Lexis 16135, at *4 (quoting *Cannons*, 899 F.2d at 86). A substantively fair decree roughly correlates with "some acceptable measure of comparative fault." *Id.* (internal citation and quotation marks omitted); *accord New York v. City of Johnstown*, Nos. 87-CV-636, 87-CV-637, 1998 U.S. Dist. Lexis 5037, at *15-17 (N.D.N.Y. Apr. 2, 1998). A settlement is reasonable and consistent with CERCLA if it compensates the public adequately for its costs and damages and appropriately reflects the parties' litigation positions. *City of Bangor*, 532 F.3d at 86; *see also Cannons*, 899 F.2d at 89-91; *City of Johnstown*, 1998 U.S. Dist. Lexis 5037, at *19.

The decree is procedurally fair because the State and Triton were both represented by sophisticated counsel who engaged in a good-faith, arm's length negotiation. *See* Sinkman Decl. ¶ 10. The terms of the decree are also substantively fair. The State ultimately agreed on a

7

settlement payment of $100,131 from Triton, one of more than thirty defendants in this case. Consent Decree, ECF 344-1 ¶ 9. That payment, as a percentage of the State's total estimated damages of $3 million, correlates to approximately half of the number of truckloads of construction waste brought to the Park from Triton's construction site, as compared with the total number of truckloads of construction waste brought to the Park from all the construction sites. *See* Compl. ¶ 141; Sinkman Decl. ¶ 12. The State alleges that another defendant at Triton's construction site also arranged for transportation of waste to the Park. Compl. ¶ 147.

The decree is also reasonable and consistent with the purposes of CERCLA. The settlement payment is based on the State's estimated damages of $3 million, which in turn is based on the value of a trip to the Park and the estimated number of trips to the Park that would have been made while it was closed for a cleanup. The settlement payment constitutes adequate compensation from one of more than thirty defendants for the three-year lost use of the Park and reflects a reasonable compromise that adequately resolves part of this case. *See Panex Industries, Inc.*, 2000 U.S. Dist. Lexis 7913, at *7 (settlement was reasonable because it compensated the State and saved it further litigation costs). The decree thus furthers CERCLA's goals of imposing liability on an allegedly responsible party and allowing the State and Triton to avoid further litigation. Indeed Triton decided to settle with the State even though it continues to deny any liability. *See* Consent Decree at p. 2.

## II.     The Objections to the Settlement are Meritless

The objecting defendants ("objectors") argue first, based on *Arizona v. City of Tucson*, 761 F.3d 1005 (9th Cir. 2014), that the Court must apply some unspecified level of heightened scrutiny to evaluate the fairness of the settlement. ECF No. 346 at p. 1. The Ninth Circuit ruled in *Arizona* that States that enter into CERCLA consent decrees are entitled to "some deference,"

8

but not the same level of deference as EPA. *Arizona*, 761 F.3d at 1014. *See also City of Bangor*, 532 F.3d at 94 (similar); *Next Millennium Realty, LLC*, Order at p. 15. In any event, objectors do not disagree that the Court owes some level of deference to the settling parties and that the Court must simply satisfy itself that the settlement is fair, reasonable, and consistent with the purposes of CERCLA. *See Arizona*, 761 F.3d at 1012; *City of Bangor*, 532 F.3d at 86, 95. The settlement meets this standard.

Second, objectors argue that the State's method of calculating the amount of its settlement with Triton is "overly simplistic." ECF No. 346 at p. 2. But CERCLA does not require precision in determining an appropriate settlement amount. Rather, CERCLA only requires "'some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done.'" *Panex Industries, Inc.*, 2000 U.S. Dist. Lexis 7913, at *9 (alteration in original) (quoting *Cannons*, 899 F.2d at 87) (approving consent decrees over objection of non-settling defendants)); *accord Next Millennium Realty, LLC*, Order at pp. 17-18 (citing *United States v. Davis*, 11 F. Supp. 2d 183, 190 (D. R.I. 1998), *aff'd in relevant part*, 261 F.3d 1 (1st Cir. 2001)). The State's method for apportioning liability "should be upheld so long as the [State] supplies a plausible explanation for it." *Cannons*, 899 F.2d at 87-88 (noting that "[t]here is no universally correct approach" to measuring comparative fault," "the best measure" "should be left largely to the [government's] expertise," and the government "must also be accorded flexibility to diverge from an apportionment formula"). Courts should defer to the government's method of allocating liability, "particularly when the [defendants] involved are numerous and the situation is complex." *Id.* at 88.

The settlement with Triton reflects a rational estimation of its liability based upon the number of truckloads of waste attributable to it and disposed in the Park. Apportioning liability based upon the estimated volume of waste attributable to a defendant is a well-established approach under CERCLA. *See Cannons*, 899 F.2d at 87-88 (settling parties' comparative fault was properly based on the relative volume of their waste; rejecting argument that settlements needed to consider the relative toxicity of defendants' waste even if that would be a more fair approach); *Panex*, 2000 U.S. Dist. Lexis 7913, at *7, *12-15 (similar); *see also Next Millennium Realty, LLC*, Order at p. 17 (the State's determination of comparative fault need not reflect "the best, or even the fairest, of all conceivable methods") (quoting *55 Motor Ave. Co.*, 332 F. Supp. 2d at 531).

Third, objectors contend that the settlement allocates liability inequitably among settling and non-settling parties. ECF No. 347 at p. 2. But as objectors themselves note, "CERCLA does not preclude settlement agreements operating to the disadvantage of non-settling parties." *Id.*; *accord Cannons*, 899 F.2d at 89, 91 ("[R]ewarding [defendants] who settle sooner rather than later is completely consonant with CERCLA's makeup"; "Congress explicitly created a statutory framework that left nonsettlors at risk of bearing a disproportionate amount of liability"); *Panex*, 2000 U.S. Dist. Lexis 7913, at *9, *15. And the objectors do not dispute that the settlement resulted from a procedurally fair process. The State is also willing to discuss settlement with objectors and the other defendants.

Fourth, objectors ask the Court to delay settlement until after considerable discovery has occurred. Objectors would apparently require document and expert discovery regarding each defendant's "respective [thirteen] construction sites," "whether the [more than 170] truck[loads] [of waste] were the same size, where in the Park the waste was ultimately deposited and,

10

significantly, whether those truck[loads] contained hazardous substances." ECF No. 346 at p. 2 (emphasis omitted).

CERCLA does not require discovery on or definitive answers to these factual questions prior to settlement. The court in *Panex*, for instance, observed that where there is an incomplete factual record, a procedurally fair method of determining relative culpability may be used as the basis for a substantively fair settlement. 2000 U.S. Dist. Lexis 7913, at *13. The *Panex* court found that the non-settling defendants' relative culpability was sufficiently established based simply on a survey which stated that an entity related to the defendants had disposed of a certain volume of waste per year. *Panex*, 2000 U.S. Dist. Lexis 7913, at *12-13. The settlement amount "assumed" that this waste consisted entirely of a hazardous substance. *Id.* at *13. It also included a calculation error concerning the volume of this waste compared to the waste disposed by the settling defendants. *Id.* The court nevertheless approved the settlement over objections. *Id.* at *16.

In *Cannons*, the district court similarly approved consent decrees based on the volume waste disposed by each defendant without requiring further discovery. *United States v. Cannons Engineering Corp.*, 720 F. Supp. 1027, 1046 (D. Mass. 1989). The court rejected the notion that settlement needed to wait until there had been discovery regarding "the precise percentage of hazardous substances in the waste sent by" many arrangers, as that would have likely resulted in a substantial delay. *Id.* The First Circuit affirmed, reasoning in part that the lack of precise data "in the early phases of environmental litigation" regarding "the total extent of harm caused" by each defendant should not prevent settlement, as that would contradict a main goal of CERCLA. 899 F.2d at 88. *See also In re Cuyahoga Equip. Corp.*, 980 F.2d at 119 (observing that one of CERCLA's main goals is to encourage settlements and to avoid the expenditure of public funds

11

on lengthy litigation). Accordingly, Triton and the State are entitled to settle now, prior to discovery.

Finally, while objectors assert that the settlement does not further CERCLA's purpose of reducing the State's litigation burden, the State will face one less defendant. *See* ECF No. 347 at p. 3. Further, objectors will not be prejudiced by the settlement with Triton to the extent that their potential liability will be reduced by the amount paid by Triton, and each objector can still seek contribution from the remaining more than thirty defendants. *See* 42 U.S.C. §§ 9613(f)(1)-(2).

## CONCLUSION

For the foregoing reasons and the reasons provided in the State's previous submissions (ECF Nos. 344, 350), the Court should enter the proposed consent decree settling the State's case against Triton.

Dated: New York, New York
       November 20, 2018

                      Respectfully submitted,

                      BARBARA D. UNDERWOOD
                      Attorney General of the State of New York
                      Attorney for Plaintiffs

By:   /s/ Matthew J. Sinkman
       Assistant Attorney General
       Environmental Protection Bureau
       28 Liberty Street, 19th Floor
       New York, New York 10005
       (212) 416-8446