UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
BASIL SEGGOS, as Commissioner of the New York :
State Department of Environmental Conservation and :
Trustee of New York State's Natural Resources, and :
the STATE OF NEW YORK, :
                                                Plaintiffs, :    NO. 2:17-CV-2684 (SJF) (ARL)
                                    v. :
THOMAS DATRE, JR., et al., :
                                    Defendants. :
---------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO THE STATE'S MOTION
REQUESTING ENTRY OF A CONSENT DECREE SETTLING THE STATE'S CASE
AGAINST DEFENDANT TRITON CONSTRUCTION COMPANY, LLC**

Nathaniel P.T. Read
Christian R. Everdell
Sophia Soejung Kim
COHEN & GRESSER LLP
800 Third Avenue
New York, NY 10022
Phone: (212) 957-7600
Fax: (212) 957-4514

*Attorneys for Building Dev Corp. and
Dimyon Development Corp.*

Building Dev Corp. and Dimyon Development Corp. (collectively, the "96 Wythe Defendants") respectfully submit this memorandum in opposition to the motion by Basil Seggos, as Commissioner of the New York State Department of Environmental Conservation and Trustee of New York State's Natural Resources, and the State of New York (collectively, the "State"), requesting the entry of a consent decree (the "Consent Decree") settling the State's case against defendant Triton Construction Company, LLC ("Triton").

## PRELIMINARY STATEMENT

Under CERCLA, the district court is obligated "to independently scrutinize the terms of the settlement" to ensure that any proposed consent decree is "fair, reasonable, and consistent with CERCLA's objectives." *United States v. Montrose Chemical Co.*, 50 F.3d 741, 747-48 (9th Cir. 1995) (internal quotation marks omitted). The proposed Consent Decree with Triton is neither fair, nor reasonable, nor consistent with CERCLA's objectives because the State's calculation of the total damages and its rationale for apportioning liability among the defendants are fundamentally flawed for at least three reasons. First, the State's $3 million estimate of the natural resource damages is vastly overstated, as the report on which the State relied shows. Second, the $100,131 settlement amount is fundamentally unfair because it is not based on a rational method of determining comparative fault, as CERCLA requires, but is instead based on a mistake – a mistake the State concedes. Finally, the State's rationale for apportioning damages among the defendants is flawed because it only accounts for the potential liability of the arranger defendants, and does not account for that of the broker defendants and the operator/transporter defendants. Accordingly, the Court should reject the proposed Consent Decree and deny the State's motion.

**ARGUMENT**

To meet its burden of establishing that the proposed settlement with Triton is "fair and reasonable," the State must show that the settlement is based on (i) a reasonable estimate of total natural resource damages claimed; and (ii) a rational method of determining comparative fault, apportioning liability based on how much harm each potentially responsible party has caused. *See Montrose Chemical*, 50 F.3d at 746-48; *Arizona v. City of Tucson*, 761 F.3d 1005, 1012-13 (9th Cir. 2014). The information the State provides now does not establish that the proposed settlement with Triton is "fair and reasonable." To the contrary, it shows that the methodology used by the State is arbitrary and unreasonable.

**I.    THE STATE'S ESTIMATE OF THE TOTAL NATURAL RESOURCE DAMAGES IS FLAWED[1]**

The State's $3 million estimate of the total natural resource damages is based on a flawed methodology that is not supported by the data upon which the State claims to rely, and should be rejected. In calculating the damages, the State relies primarily on the data in a 2010 report prepared by the Trust for Public Land called *The Economic Benefits and Fiscal Impact of Parks and Open Space in Nassau and Suffolk Counties, New York* (the "Report"). (*See* Sinkman Decl., Ex. A). The State calculated the $3 million damages estimate by using the following formula based on data in the Report:

---

[1] The State asserts that the $3 million damages estimate it used for the Triton Consent Decree "does not include the costs of employing experts to estimate the State's damages, which are recoverable under CERCLA." (Declaration of Matthew J. Sinkman in Support of the State's Motion, dated November 29, 2018 ("Sinkman Decl.") ¶ 9). If the State intends to collect those additional damages from the other defendants, it would be unfair and unreasonable to let Triton settle without paying its fair share of those damages as well. If the State intends to collect only lost use damages and forgo expert costs and inflation, it should make that clear.

2

>**281,538** (the total number of visits to the Park in a single year) x
>
>**$3.98** (the total value of each visit) x **3** (number of years the Park was closed) = **$3,361,563.72**

(*See id.* ¶¶ 1-9). The State then rounded this number down to $3 million "to be conservative and to account for litigation risks." (*Id.* ¶ 9).

Many of the flaws in the State's methodology – in particular, the flaws that resulted in the State's estimate of 281,538 total visits to the Park per year – were already highlighted by Defendants New York Major Construction Corp. and M&Y Developers Inc. in their memorandum in opposition to the State's motion. (*See* Mem. of Law in Opp. of Defs. New York Major Construction Corp. and M&Y Developers Inc. at 7-9). For the sake of brevity, we do not repeat them here.

There is, however, an equally consequential defect in the State's decision to use $3.98 for the total value of each visit to the Park. The Report uses a concept called "Unit Day Value" to quantify the dollar value of each visit. (*See* Sinkman Decl., Ex. A at 23). The Report identifies three categories of use for the parks in Suffolk County and assigns a different average value per visit for each of the three:

1. General Park Use (playgrounds, trails, dog walking, picnicking, etc.)
   Person Visits = 139,000,000
   Average Value per Visit = **$2.37** each.

2. Sports Facilities Uses (tennis, team sports, bicycling, etc.)
   Person Visits = 98,500,000
   Average Value per Visit = **$3.98** each.

3. Special Uses (fishing, festivals, concerts, attractions, etc.)
   Person Visits = 12,500,000
   Average Value per Visit = **$5.48** each

(Sinkman Decl., Ex. A at 24 (Table 5)).

3

The State arbitrarily picked the middle value ($3.98) and applied it to *all* 844,614 estimated visits to the Park over the course of three years to calculate the total value of the lost use damages. (Sinkman Decl. ¶ 4). The State asserts that the $3.98 figure is appropriate because it is "the value provided by the Report for visits to parks in Suffolk County that have sports facilities." (*Id*. citing Report at 24). Although the State acknowledges that the Report assigns a lower value ($2.37) for general park use and a higher value ($5.48) for special uses, the State chose $3.98 as the correct estimation of the value of each visit to the Park "[b]ecause the Park has been used for all of these purposes." (*Id*. citing Compl. ¶¶ 69-70).

Even assuming that it is appropriate to use the values in the Report to estimate the value of an average visit to the Park, the State's use of $3.98 as the value for each and every visit is fundamentally flawed. First, it is indefensible to assign a value of $3.98 for each visit to the Park simply because the Park has sports facilities, because the Report states that over 55% of visits to Suffolk County parks – 139,000,000 of the 250,000,000 total person visits per year – were for general park use and thus worth, at most, only $2.37 per visit. (*See* Sinkman Decl., Ex. A at 24).

Second, according to the State's own allegations, many of the sports facilities that the Park offered were either shut down or in serious disrepair when the Park was closed. (*See* Compl. ¶ 71 ("The soccer fields had deteriorated by 2013 due to heavy use"); ¶ 72 ("The swimming pool had been closed nearly a year when the Park was closed on May 5, 2014[.]")). It is therefore unreasonable for the State to assume that, had the Park not been closed, the local residents of Brentwood would have used the closed or unusable sports facilities in the Park with the same frequency as such facilities were used at other Suffolk County parks.

For these reasons, the State's use of the $3.98 figure to estimate the total natural resource damages substantially inflates the damages estimate and does not result in a "fair and

4

reasonable" settlement, as CERCLA requires. Indeed, it would be far more appropriate and "conservative" (to use the State's own words) to estimate the total damages using the $2.37 figure for general park uses, which would yield a total damages amount of roughly $2 million ($2,001,735.18), not $3 million. At the very least, the State should use a weighted average of the dollar values for each type of use based on their frequency, rather than use the $3.98 figure for all Park visits. Accordingly, the $3 million damages estimate is faulty and cannot serve as the starting point for the settlement with Triton or any other defendant in this case. The Court should reject the proposed Consent Decree on that basis alone.

## II.  THE SETTLEMENT AMOUNT WITH TRITON IS ERRONEOUS AND FUNDAMENTALLY UNFAIR

The Court should also reject the Consent Decree because the damages allocated to Triton have been allocated in an arbitrary and unfair manner. Indeed, the State has conceded that the $100,131 settlement figure, which is less than half of Triton's fair share of the damages under the State's own methodology, is the result of a mistake. (*See* Memorandum of Law in Support of the State's Motion ("Mem.") at 6 n.1 & 7-8).

In its initial letter to the court, the State stated that the settlement amount with Triton correlated to the total number of truckloads of waste brought from the Cooper Square construction site, where Triton worked, to the Park. (Dkt. No. 344 at 3). After five non-settling defendants opposed entering the Consent Decree, the State acknowledged that it had erred and that the settlement amount in fact corresponded to roughly half of the total number of truckloads of waste brought from the Cooper Square site to the Park. (Dkt. No. 350 at 1; Mem. at 6 n.1; Sinkman Decl. ¶ 12). The State nevertheless argues that the settlement with Triton is fair and reasonable because (i) another defendant that worked as a contractor at the Cooper Square site is also liable for damages; (ii) the other defendants are jointly and severally liable for the entirety of

5

the State's damages, and (iii) Triton was the first defendant to settle. (Dkt. No. 350 at 1; Mem. at 6 n.1 & 7-8; Sinkman Decl. ¶¶ 12, 13).

In essence, the State argues that its mistake does not matter because Triton settled first and the other defendants can cover the rest of the damages. In other words, the State believes it can disregard its own apportionment methodology and arbitrarily reduce Triton's liability regardless of the consequences to the non-settling defendants. That is decidedly *not* a rational method of apportioning liability based on how much harm each potentially responsible party has caused. *See City of Tucson*, 761 F.3d at 1012. Once the State has adopted a methodology for apportioning damages among the defendants, it must adhere to it. While the State can offer discounts to defendants who settle early, it cannot use such a discount to justify an apportionment error after-the-fact. Accordingly, the settlement amount is arbitrary and unreasonable and should not be upheld.

### III. THE STATE'S APPORTIONMENT OF DAMAGES IS FLAWED

Finally, the State's method for apportioning liability among the defendants is flawed because the State only accounts for the liability of 28 contractors and sub-contractors at the construction sites, and fails to include in its calculation the two waste brokers – IEV Trucking Corp. and COD Services Corp. ("COD") – and the four waste haulers – Thomas Datres, Jr., Christopher Grabe, 5 Brothers Farming Corp. and Daytree at Cortland Square Inc. (collectively, "the Datres"). (Compl. ¶¶ 8-12, 13-14). For example, based on the State's submissions it appears that the State intends to apportion liability for the Cooper Square site between Triton and the other arranger defendant who worked at that site, East Coast Drilling NY Inc. ("East Coast Drilling") (Dkt. No. 350 at 1; Mem. at 8; Sinkman Decl. ¶ 13; Compl. ¶¶ 23, 145). However, the Complaint also alleges that COD and the Datres were involved in the disposal of the waste from

6

the Cooper Square site as a broker and as operators/transporters, respectively. (Compl. ¶¶ 147, 148). The State does not explain what portion of liability it would allocate to COD and the Datres or how that might affect the damages allocated to Triton and East Coast Drilling.

Presumably, the State plans to treat the other arranger defendants the same way, holding them fully responsible for the total number of truckloads originating from their respective construction sites, without taking into account the liability of the broker defendants and operator/transporter defendants. But that method would be improper because it would permit the State to recover more than its alleged total natural resource damages of $3 million (an artificially inflated figure to begin with, as discussed in detail above). Accordingly, the State's proposed apportionment formula is not a rational method for allocating liability and would inevitably prejudice the non-settling defendants. The Court should therefore reject the proposed Consent Decree and deny the State's motion.

## CONCLUSION

For the foregoing reasons, the 96 Wythe Defendants respectfully request that the Court deny the State's motion in its entirety.

Dated: December 20, 2018
      New York, New York

                                        COHEN & GRESSER LLP

                                        By: _____
                                        Nathaniel P.T. Read
                                        Christian R. Everdell
                                        Sophia Soejung Kim
                                        800 Third Avenue
                                        New York, NY 10022
                                        (212) 957-7600
                                        *Attorneys for Building Dev Corp. and Dimyon Development Corp.*