UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
BASIL SEGGOS, as Commissioner of the New York State
Department of Environmental Conservation and Trustee of New
York State's Natural Resources, and the STATE OF NEW YORK,

                Plaintiffs,

     -against-

THOMAS DATRE, JR.; CHRISTOPHER GRABE; 5 BROTHERS
FARMING CORP.; DAYTREE AT CORTLAND SQUARE INC.;
IEV TRUCKING CORP.; COD SERVICES CORP.; ALL ISLAND
MASONRY & CONCRETE, INC.; BUILDING DEV CORP.;
DIMYON DEVELOPMENT CORP.; NEW EMPIRE BUILDER
CORP.; CIPRIANO EXCAVATION INC.; TOUCHSTONE
HOMES LLC; SAMS RENT AND CONSTRUCTION; SAM'S
RENT, INC.; NEW YORK MAJOR CONSTRUCTION INC.;
EAST COAST DRILLING NY INC.; TRITON CONSTRUCTION
COMPANY, LLC; SUKRAM AND SONS LTD.; M & Y
DEVELOPERS, INC.; "JOHN DOE"; ATRIA BUILDERS, LLC;
WOORI CONSTRUCTION INC.; PLUS K CONSTRUCTION
INC.; NY FINEST ENTERPRISES INC.; MONACO
CONSTRUCTION CORP.; ALEF CONSTRUCTION INC.; 158
FRANKLIN AVE. LLC; LUCIANO'S CONSTRUCTION, INC.;
ILE CONSTRUCTION GROUP, INC.; EAST END MATERIALS,
INC.; SPARROW CONSTRUCTION CORP.; CIANO
CONCRETE CORP.; FREEDOM CITY CONTRACTING CORP.;
and TOTAL STRUCTURE SERVICES INC.,

                Defendants.
----------------------------------------------------------------------X

Case No.:
2:17-CV-2684
(SJF) (ARL)

**DEFENDANT C.O.D. SERVICES CORP.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' PROPOSED SETTLEMENT WITH DEFENDANT TRITON CONSTRUCTION COMPANY LLC**

**JASPAN SCHLESINGER LLP**
Attorneys for Defendant
C.O.D. SERVICES CORP.
300 Garden City Plaza, Fifth Floor
Garden City, New York 11530
(516) 746-8000

## **TABLE OF CONTENTS**

**PAGE NO.**

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND .............................................1

STANDARD OF REVIEW .......................................................................................................4

ARGUMENT............................................................................................................................7

THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT AS IT
IS NEITHER FAIR, REASONABLE NOR CONSISTENT WITH CERCLA .............................7

CONCLUSION......................................................................................................................11

# TABLE OF AUTHORITIES

**PAGE NO.**

### Cases

Arizona v. City of Tucson,
  761 F.3d 1005 (9th Cir. 2014) .................................................................................. 4, 10

City of Bangor v. Citizen Commc'ns Co.,
  No. 02-183-B-S, 2007 U.S. Dist. LEXIS 38762 (D. Me. May 25, 2007) ................... 5

City of Bangor v. Citizens Commc'ns Co.,
  532 F.3d 70 (1st Cir. 2008) ......................................................................................... 5

New York v. SCA Servs.,
  No. 83 Civ. 6402 (RPP), 1993 U.S. Dist. LEXIS 2265 (S.D.N.Y. Feb. 26, 1993) ..... 4

United States v. Aerojet Gen. Corp.,
  606 F.3d 1142 (9th Cir. 2010) .................................................................................... 6

United States v. Alliedsignal, Inc.,
  62 F Supp. 2d 713 (N.D.N.Y. 1999) ..................................................................... 5, 10

United States v. Cannons Eng'g Corp.,
  899 F.2d 79 (1st Cir. 1990) ..................................................................................... 4, 5

United States v. Charles George Trucking,
  34 F.3d 1081 (1st Cir. 1994) ....................................................................................... 5

United States v. DiBiase,
  45 F.3d 541 (1st Cir. 1995) ......................................................................................... 5

United States v. E.I. DuPont De Nemours & Co.,
  No. 13-CV-810S, 2014 U.S. Dist. LEXIS 97619 (W.D.N.Y. July 16, 2014) ............ 5

United States v. GE,
  460 F. Supp. 2d 395 (N.D.N.Y. 2006) ........................................................................ 5

United States v. Hooker Chems. & Plastics Corp.,
  540 F. Supp. 1067 (W.D.N.Y. 1982) *aff'd* 749 F.2d 968 (2d Cir 1984) .................... 6

United States v. Montrose Chem. Corp.,
  50 F.3d 741 (9th Cir. 1995) *rev'd on other grounds by* California v. Montrose Chem. Corp.,
  104 F.3d 1507 (9th Cir. 1997) .................................................................................. 10

United States v. Pesses,
  1994 U.S. Dist. LEXIS 18684, at *17-18
  (W.D. Pa. Nov. 7, 1994, Civil Action No. 90-654) .................................................... 6

CEV/D1343995v3/M072626/C0176590

**Statutes**

42 USC § 9613(f)(2) .................................................................................................... 6

Case 2:17-cv-02684-MKB-LB   Document 370-4   Filed 01/03/19   Page 4 of 15 PageID #: 3254

CEV/D1343995v3/M072626/C0176590

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendant, COD Services Corp. ("COD"), in opposition to the motion by plaintiffs, Basil Seggos, suing herein as Commissioner of the New York State Department of Environmental Conservation ("DEC") and Trustee of New York State's Natural Resources and the State of New York (collectively "Plaintiff" or the "State"), which seeks a consent decree resolving its claims against defendant Triton Construction Company, LLC ("Triton"). As discussed below, the proposed settlement between Plaintiff and Triton is neither fair, reasonable nor consistent with Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by 42 U.S.C. §§9601-9675 ("CERCLA"), and should be rejected by the Court.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The facts which are relevant to Plaintiff's motion are summarized below and are taken from the Complaint (Docket No.: 1) and the correspondence submitted by Plaintiff with respect to its request that the Court enter a consent decree between it and Triton (Docket No.: 341).

The Town of Islip[1] (the "Town") is the owner of Roberto Clemente Park (the "Park"), designated parkland located in Brentwood, New York (Compl. ¶¶1, 67). The Town granted permission to representatives of a church, defendant Iglesia De Jesucristo Palabra Miel and members of the Church (collectively the "Church Defendants"), to rehabilitate a soccer field in the Park, at the Church Defendant's own cost and expense using volunteer labor (Compl. ¶¶73-74). Plaintiff alleges that the Church Defendants deposited top soil and seed on the soccer field in May of 2013 (Compl. ¶74).

---

[1] The Town commenced a separate action entitled: Town of Islip v. Thomas Datre, Jr. et al., Eastern District of New York Case No.: 16-CV-2156, seeking to recover the cost related to clean up the Park (the "Islip Action").

According to the allegations in Plaintiff's Complaint, during the period between May and July 2013, defendants Thomas Datre, Jr. ("Datre Jr.") and Christopher Grabe ("Grabe") (Datre Jr., Grabe, 5 Brothers Farming Corp., and Daytree at Cortland Square Inc., collectively the "Datres"), somehow became involved in the Church's Park rehabilitation efforts and delivered several thousands of tons of construction waste to the Park (Compl. ¶76).

In January of 2014, the Town received complaints from the public about the presence of brick, metal, rebar and debris in the recharge (Compl. ¶77). On January 24 and 25, 2014, the Datres removed some of the construction waste from the recharge area but deposited additional construction waste in the Park in March and April of 2014 (Compl. ¶78). In April of 2014, the Suffolk County District Attorney commenced a criminal investigation into the activities at the Park (Compl. ¶86). The Complaint contains no allegations that illegal dumping occurred in the Park after the launch of the District Attorney's investigation. The District Attorney's investigation resulted in the arrest and conviction of the individuals responsible for the illegal dumping (Compl. ¶¶ 99-100).

Plaintiff brought this action, pursuant to CERCLA and common law to recover natural resource damages, including the alleged value of the public's lost use of the Park during the time that it was closed (Docket No. 344). Plaintiff commenced this action against various entities alleging that they delivered materials to the Park or arranged for the delivery of such materials. Plaintiff alleges that at least 171 truckloads of material were delivered to the Park (Compl. ¶¶104, 117, 125, 133, 141, 152, 161, 169, 177, 187, 195, 202 and 211). Plaintiff alleges that Triton delivered at least twelve truckloads of waste to the Park (Sinkman Decl. at ¶11).

In its Complaint, Plaintiff asserts certain allegations against Triton including that: (i) Triton, "was a general contractor for construction at 35-39 Cooper Sq., and arranged by contract or otherwise for construction waste containing hazardous substances to be disposed by other parties, who transported the waste to the Park" (Compl. ¶24); (ii) "[a]t least twelve times between August 2013 and August 2014, the Datres transported construction waste containing hazardous substances from 35-39 Cooper Sq. to the Park where they disposed of it" (Compl. ¶141); (iii) "[b]efore Cooper LLC purchased the property, it commissioned two environmental reports - a 'Hydro-Tech Phase I Assessment' in 2011 and an 'Emteque Soil and Water Sampling Report' in 2012 - to assess potential environmental conditions at the property. Those reports revealed the presence of hazardous substances at the property, including: barium, chromium, copper, lead, zinc, fluoranthene, and asbestos" (Compl. ¶149); (iv) Triton was provided with the two environmental reports (Compl. ¶150); and (v) Triton knew that the construction waste generated by 35-39 Cooper Sq. contained hazardous substances (Compl. ¶150-151).

Pursuant to the allegations in the Complaint with respect to COD, Plaintiff alleges, among other things, that: "COD acted as a broker for the removal and disposal of construction waste containing hazardous substances from construction sites in the New York City metropolitan area. COD arranged by contract or otherwise for that construction waste to be disposed by the Datres, who transported the waste to the Park" (Compl. ¶14).

The Town, in the Islip Action, recently identified 14 potentially responsible parties ("PRPs"), who were previously labeled as "John Doe" defendants in the Islip Action, including 61 Park Place LLC, 96 Wythe Acquisition LLC, 192 Stuy Inc., Stuyvesant LLC, 4111 18th Avenue LLC, Bronxcare Health System, Central Bushwick LLC, Chen 867 Realty LLC, The Classon in Clinton LLC, Cooper and 6th Property LLC, Hohn Khani and Susan Khani, Lex

3

Grand Holdings LLC, Louisiana Purchase LLC, MD Kohn Realty II LLC and Stahav Realty Corp. (collectively "Potential Defendants"). These Potential Defendants have not been named in this action but may be responsible for Plaintiff's alleged damages in this action. These Potential Defendants are not addressed as part of the proposed settlement.

## STANDARD OF REVIEW

"Under CERCLA, it is the duty of the district court to ensure that any proposed consent decree is 'fair, reasonable, and faithful to the objectives of the governing statute.'" New York v. SCA Servs., 1993 U.S. Dist. LEXIS 2265, at *10 (S.D.N.Y. Feb. 26, 1993, 83 Civ 6402 (RPP)) (quoting United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990)). As the Court explained in Arizona v. City of Tucson, 761 F.3d 1005, 1011-1012 (9th Cir. 2014):

> In order to approve a CERCLA consent decree, a district court must conclude that the agreement is procedurally and substantively "fair, reasonable, and consistent with CERCLA's objectives." "Fair" and "reasonable" are comparative terms. Thus, in order to approve a CERCLA consent decree, a district court must find that the agreement is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done."
>
> In approving a CERCLA consent decree, the district court has an "obligation to independently scrutinize the terms of [the agreement]." In so doing, the court must "gauge the adequacy of settlement amounts to be paid by settling [parties by comparing] the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then . . . factor into the equation any reasonable discount for litigation risks, time savings, and the like . . . ."
>
> ***
>
> A district court abuses its discretion where it does not fulfill its obligation to engage in this comparative analysis (internal citations omitted).

"When reviewing a proposed consent decree in the CERCLA context, a trial court's ... function is circumscribed: it must ponder the proposal only to the extent needed to 'satisfy itself

4

that the settlement is [1] reasonable, [2] fair, and [3] consistent with the purposes that CERCLA is intended to serve." United States v. Cannons Engineering Corp., 899 F.2d 79, 85 (1st Cir. 1990); United States v. DiBiase, 45 F.3d 541, 543 (1st Cir. 1995); United States v. E.I. DuPont De Nemours & Co., No. 13-CV-810S, 2014 U.S. Dist. LEXIS 97619, at *2 (W.D.N.Y. July 16, 2014) ("In examining a proposed consent decree in the environmental context, a court must satisfy itself that the settlement is reasonable, fair, and consistent with the purposes of the statutes under which the case was brought."); United States v. Alliedsignal, Inc., 62 F. Supp. 2d 713, 719 (N.D.N.Y. 1999).

"The fairness inquiry has two facets, procedural and substantive fairness. To determine procedural fairness the negotiation process is reviewed to 'gauge its candor, openness, and bargaining balance.' Substantive fairness deals with 'corrective justice and accountability; a party should bear the cost of the harm for which it is legally responsible.'" United States v. GE, 460 F. Supp. 2d 395, 401-02 (N.D.N.Y. 2006) (quoting Cannons Eng'g Corp., 899 F.2d at 86-87). "The logic behind these concepts dictates that settlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." Cannons Eng'g Corp., 899 F2d at 87 (internal citations omitted).

The focus of the substantive fairness inquiry is on "'concepts of corrective justice and accountability,' which can include a comparison of the proportion of total costs to be paid by the settlers with the proportion of liability attributable to them." City of Bangor v. Citizens Communs. Co., 532 F.3d 70, 86 (1st Cir. 2008) (citing City of Bangor v. Citizen Communs. Co., 2007 U.S. Dist. LEXIS 38762, at *10 (D. Me. May 25, 2007) (quoting United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1088 (1st Cir. 1994)).

"The proponents of a consent decree have the burden of producing evidence which enables the court to determine independently whether the proposed consent decree is fair, reasonable and consistent with the goals of CERCLA. In considering whether to approve a consent decree, the court must conduct an independent evaluation of the evidence relied upon in relation to the agreements reached and must eschew any rubber stamp approval of it." United States v. Pesses, 1994 U.S. Dist. LEXIS 18684, at *17-18 (W.D. Pa. Nov. 7, 1994, Civil Action No. 90-654) (internal citations omitted) (citing United States v. Hooker Chemicals and Plastics Corp., 540 F. Supp. 1067 (W.D.N.Y. 1982), *aff'd,* 749 F.2d 968 (2d Cir. 1984)).

"In order for the proponents to meet their burden of proof, they must develop and present an adequate record which enables the court to evaluate the proposed decree in light of 'the evidence relied upon and the evidence discarded; the questions addressed by the agency and those by-passed; the choices open to the agency and those made.'" Id. (internal citations omitted).

Non-settling parties in a CERCLA action, like COD, have a significant protectable interest in the reasonableness of the consent decree since CERCLA provides that the settling party is protected from contribution claims by the non-settling parties. 42 U.S.C. §9613(f)(2); United States v. Aerojet Gen. Corp., 606 F.3d 1142, 1149-1150 (9th Cir. 2010).

As discussed below, the Court should deny Plaintiff's motion because the consent decree: (i) fails to provide an adequate basis to evaluate the reasonableness and fairness of the settlement; (ii) would leave the non-settling defendants with an unreasonable share of damages; and (iii) does not promote the objectives of CERCLA.

## ARGUMENT

### THE COURT SHOULD REJECT THE PROPOSED SETTLEMENT AS IT IS NEITHER FAIR, REASONABLE NOR CONSISTENT WITH CERCLA

Plaintiff's motion should be denied since the consent decree provides no basis for the Court to assess the reasonableness and fairness of the proposed settlement as it provides no factual basis for Plaintiff's alleged natural resource damages in the amount of $3 million and no analysis of the various defendants' comparative negligence. There is no factual basis for Plaintiff's calculations as there has been no discovery conducted in this action. Instead, Plaintiff relies solely upon a report prepared by the Trust for Public Land from 2009 entitled: <u>The Economic Benefits and Fiscal Impact of Parks and Open Space in Nassau and Suffolk Counties, New York</u> (the "Report"), as the factual predicate to support its proposed settlement. However, this Report does not provide a factual basis to support the terms of the proposed settlement and there is no evidence that this Report is accurate and should be adopted.

As an initial matter, the Report was prepared in 2009. The alleged illegal dumping occurred between mid-2013 and the spring of 2014. Thus, the Report addresses the incorrect time frame.

Furthermore, as part of its proposed settlement, Plaintiff makes numerous assumptions and extrapolations based upon the Report without any factual basis for such conclusions. First, Plaintiff alleges that Brentwood residents would have made 844,614 trips to the Park over the three years (Sinkman Decl. at ¶9). However, there are no facts to support this assumption. Indeed, the Report upon which Plaintiff relies does not provide a calculation as to how many people actually visited the Park. Instead, this figure is based upon the estimated number of trips made to parks generally by residents in Nassau and Suffolk Counties in which the Report determined that each resident made approximately 61 visits to a park each year. Plaintiff then

multiplied the number of residents in Brentwood by 61 and divided by the number of parks in Brentwood to arrive at the total number of visits to the Park over a three year period (Sinkman Decl. at ¶¶7-9). This over simplistic analysis has no factual basis. The mere fact that a certain number of people visited parks in Nassau and Suffolk Counties has no correlation to the persons who actually visited the Park. There are numerous parks in Suffolk and Nassau Counties which provide access to the beach (i.e., Jones Beach, Robert Moses Beach, etc.). Obviously, more persons are going to visit these types of parks then are going to visit the Park. Plaintiff does not account for this discrepancy.

Moreover, the entire basis of the Report as to the number of visits to parks in Nassau and Suffolk Counties is equally flawed and of no evidentiary value. The Report is based upon a telephone survey of 301 residents in Nassau County and 300 residents in Suffolk County (Report at p. 23). Based upon this limited survey, the Report then extrapolates the number of persons who actually visited all of the parks in Suffolk and Nassau Counties. This Report does not provide a sufficient basis to support Plaintiff's proposed settlement.

Next, Plaintiff estimates its natural resource damages at approximately $3 million (Sinkman Decl. at ¶1). This figure is derived by multiplying the alleged number of persons who visited the Park by the value of each of those visits which it derives from the Report. Plaintiff, relying upon the Report, estimates the value of each visit to the Park is $3.98 (Sinkman Decl. at ¶4). However, as discussed above with respect to the number of persons who visited the Park, there is no factual basis for utilizing $3.98 per visit to calculate the value of visiting this particular Park.

CEV/D1343995v3/M072626/C0176590

Based upon Plaintiff's calculations, Triton's settlement payment of $100,131, one of thirty-three defendants[2] in this action, "roughly correlates to the number of truckloads of construction waste brought to the park from Triton's construction site, as compared with the total number of truckloads of construction waste brought to the park from all the construction sites alleged in the complaint. *See* Complaint ¶141" (Docket No.: 344). Applying this formula would result in each defendant having to pay an estimated $8,344.25 for each truckload of material delivered to the Park from each of defendants' job sites without regard to the size of each truckload, where the material was delivered and, most importantly, whether the materials which were delivered contained hazardous substances. The proper analysis is not the number of truckloads delivered to the Park but the number truckloads delivered to the Park which actually contained hazardous substances. Non-hazardous materials are not actionable under CERCLA. Under CERCLA, cleanup is required to address the cleanup of materials which pose a threat to human health and the environment. Simply counting the number of truckloads of material without an analysis of what truckloads contained hazardous materials is not reasonable and fair.

To properly consider this proposed settlement, Plaintiff must undertake to determine exactly how many of the 171 truckloads of material delivered to the Park contained hazardous material. Only then can a proper analysis be performed as to each of the defendants' comparative fault. No such analysis was performed and no discovery has been conducted to allow for such an analysis.

Moreover, Triton is allegedly responsible for delivering 12 out of the alleged 171 truckloads of material to the Park which is approximately 7% of the truckloads delivered to the Park. If Triton delivered 7% of the truckloads of material to the Park its share of the damages

---

[2] Under the proposed settlement, Plaintiff has not accounted for all defendants who may be liable for such damages including the Potential Defendants. If such Potential Defendants are included in the proposed settlement the amount that each defendant will be liable for each truckload will be reduced.

9

would be $210,000 (7% x $3,000,000.00 = $210,000.00). Thus, based upon Plaintiff's theory of damages Triton is responsible for $210,000.00 in damages but is paying less than half of what it owes. Plaintiff does not adequately explain why it is providing Triton with a 100% discount. If the Court approves the consent decree defendants will be barred from seeking contribution from Triton. As such, Triton must pay its fair share of the damages it has incurred and not some unsubstantiated number. At a minimum, the non-settling defendants should be entitled to a credit against damages in the full amount of Triton's liability and not a discounted amount.

Accordingly, Plaintiff's proposed settlement fails to provide sufficient factual support for its estimated natural resource damages and fails to properly evaluate the comparative negligence of the various defendants. See Arizona v. City of Tucson, 761 F. 3d 1005, 1012-13 (9th Cir. 2014) (reversing approval of consent decree due to district court's failure to conduct a comparative analysis of each defendants' estimated liability); United States v. Montrose Chem. Corp., 50 F.3d 741, 743 (9th Cir. 1995) (reversing district court since it abused its discretion in approving the settlement which lacked any evidence as to estimates of comparative negligence and damages) *rev'd on other grounds by* California v. Montrose Chem. Corp., 104 F.3d 1507 (9th Cir. 1997); United States v. Alliedsignal, Inc., 62 F. Supp. 2d 713, 723 (N.D.N.Y. 1999) ("The Court recognizes that CERCLA consent decrees often are necessarily imprecise and, because of CERCLA's goals of encouraging early settlement and reducing litigation costs associated with site cleanup, frequently result in disproportionate liability. These policy considerations notwithstanding, a substantively unfair consent decree must be rejected. The parties have not satisfied their burden of supporting the basis for the Consent Decree to the Court's satisfaction.") (internal citations omitted).

10

Here, the proposed settlement is premature as there has been no discovery and is not supported by any factual basis. Moreover, the proposed settlement does not properly allocate the damages between the various defendants. For example, there is no distinction between a property owner who generated the waste, the party who delivered the material to the Park and the party who simply arranged for the trucks. Plaintiff's over simplistic formula does not adequately address the comparative fault of the various types of defendants.

Finally, this settlement does not promote CERCLA's objectives. Here, settling this matter piece meal will not reduce the expenditure of public funds and avoid litigation. Indeed, this litigation will continue as against the non-settling defendants.

## CONCLUSION

Based on the foregoing, COD respectfully requests that the Court deny Plaintiff's motion for entry of a consent decree between itself and Triton.

Dated: Garden City, New York
       December 19, 2018

> JASPAN SCHLESINGER LLP
> Attorneys for Defendant
> COD Services Corp.
>
> By: /s/ Stanley A. Camhi
> Stanley A. Camhi
> Christopher E. Vatter
> 300 Garden City Plaza, Fifth Floor
> Garden City, New York 11530
> (516) 746-8000