# LAW OFFICE OF WILLIAM A. RUSKIN, PLLC

| WILLIAM A. RUSKIN | 800 WESTCHESTER AVENUE, N-641 | T: (914) 231-0360 |
| --- | --- | --- |
| wruskin@wruskinlaw.com | RYE BROOK, NEW YORK 10573 | F: (914) 231-0361 |
| | | C: (203) 253-8399 |

December 10, 2018

**VIA ECF & EMAIL**
All counsel
(Service List attached)

    Re: *Seggos et al. v. Datre et al.*
       2:17-cv-2684 (SJF) (ARL)

Dear counsel,

    I am counsel to Defendants M&Y Developers, Inc. and New York Major Construction Inc, in the above-referenced matter, which oppose entry of the proposed CERCLA consent decree between plaintiff State of New York ("Plaintiff") and defendant Triton Construction Company ("Triton").

    This letter is submitted pursuant to Judge Feuerstein's Individual Rule 4(B). Enclosed for service is the Memorandum of Law in Opposition to the State's Motion Requesting Entry of a Consent Decree Settling the State's Case Against Defendant Triton Construction Company, LLC. ("Memorandum"). Pursuant to her individual rule concerning "bundling", the Memorandum will be filed by the State on or before January 3, 2019 with all of the other submissions filed on the pending motion.

    Thank you for your time and attention to this matter.

                                        Very truly yours,

                                        /s/ William A. Ruskin

                                        William A. Ruskin

    cc. (via email only)

## Service List

| Party Represented | Firm & Attorney's Name | Attorney's Email |
|---|---|---|
| Daytree at Cortland Square Inc. | Campanelli & Associates, P.C.:<br>Andrew J. Campanelli<br>Amanda Rose Disken | ajc@campanellipc.com<br>ard@campanellipc.com<br>ecf@campanellipc.com |
| IEV Trucking Corp. | Hogan & Cassell LLP:<br>Michael D. Cassell | mcassell@hogancassell.com |
| COD Services Corp. | Jaspan Schlesinger LLP:<br>Stanley A. Camhi<br>Christopher E. Vatter<br>Jeffrey D. Lebowitz | scamhi@jaspanllp.com<br>cvatter@jshllp.com<br>jlebowitz@jaspanllp.com |
| All Island Masonry & Concrete, Inc. | Law Office of Vincent J. Trimarco Jr.:<br>Vincent J. Trimarco Jr.<br><br>Piana & Gioe:<br>Jack Piana<br>Michael S. Leinoff | trimarco@trimarcolaw.com<br>jpiana@pianagioe.com<br>mleinoff@pianagioe.com |
| Building Dev Corp. and Dimyon Development Corp. | Cohen & Gresser LLP:<br>Nathaniel P.T. Read<br>Christian Everdell<br>Soejung Kim | nread@cohengresser.com<br>ceverdell@cohengresser.com<br>sjkim@cohengresser.com |
| New Empire Builder Corp. | Desena & Sweeney LLP:<br>Paul J. Felicione | pjfesq@dslawny.com |
| Cipriano Excavation Inc. | The Law Office of Mark E. Nadjar, P.C.:<br>Mark E. Nadjar | marknadjar@optonline.net |
| Touchstone Homes LLC | Sahn Ward Coschignano & Baker, PLLC:<br>Miriam E. Villani<br>Jon A. Ward<br>Joseph Ray Bjarnson<br>Ralph Branciforte | mvillani@swcblaw.com<br>jward@swc-law.com<br>jbjarnson@swcblaw.com<br>rbranciforte@swc-law.com |

| State of NY Office of the Attorney General | Matthew J. Sinkman<br>Rebecca Fromer<br>Monica Wagner | matthew.sinkman@ag.ny.gov<br>Rebecca.Fromer@ag.ny.gov<br>Monica.Wagner@ag.ny.gov |
|---|---|---|
| East Coast Drilling NY Inc. | Cermele & Wood LLP:<br>Michael Robert Wood | mike@cw.legal |
| Triton Construction Company, LLC | Westermann Hamilton Sheehy Aydelott & Keenan, LLP:<br>David Westermann, Jr. | Davidwestermann@westerlaw.com<br>michaelkuzow@westerlaw.com |
| Atria Builders, LLC | Sive Paget & Riesel, P.C.:<br>Elizabeth Read Knauer<br>Joyce E. Kung<br>Michael S. Bogin | eknauer@sprlaw.com<br>jkung@sprlaw.com<br>mbogin@sprlaw.com |
| Plus K Construction Inc. | The Law Office of Olga Vinogradova, P.C.:<br>Olga Vinogradova<br><br>Joshua Fingold | olga@vinogradovalaw.com<br>josh@fingoldlaw.com |
| Monaco Construction Corp. and Sparrow Construction Corp | Periconi LLC:<br>James Joseph Periconi<br>Jose A. Almanzar | jpericoni@periconi.com<br>jalmanzar@periconi.com |
| Alef Construction Inc. and 158 Franklin Ave. LLC | Leo Salzman | leo@salzmanesq.com |
| ILE Construction Group, Inc. | Stein Adler Dabah & Zelkowitz LLP:<br>Adam Stein<br>Jacob E. Lewin<br><br>Herrick & Feinstein, LLP:<br>Richard Y. Im<br>Samuel Judah Bazian | astein@steinadlerlaw.com<br>jlewin@steinadlerlaw.com<br>rim@herrick.com<br>sbazian@herrick.com |

| East End Materials, Inc. | Barbara S. Albom | balbom@albomlaw.com |

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
BASIL SEGGOS, as Commissioner of the New York      :
State Department of Environmental Conservation and :
Trustee of New York State's Natural Resources, and the : CASE NO. 2:17-cv-02684-SJF-ARL
STATE OF NEW YORK,                                 :
                                                   :
                              Plaintiffs,          :
                                                   :
           - against -                             :
                                                   :
THOMAS DATRE, JR. et al.,                          :
                                                   :
                              Defendants.          :
-------------------------------------------------------------------- X
```

## MEMORANDUM OF LAW IN OPPOSITION TO THE STATE'S MOTION REQUESTING ENTRY OF A CONSENT DECREE SETTLING THE STATE'S CASE AGAINST DEFENDANT TRITON CONSTRUCTION COMPANY, LLC

**LAW OFFICE OF WILLIAM A. RUSKIN, PLLC**
Attorneys for Defendants
New York Major Construction Corp. and
M&Y Developers Inc.
800 Westchester Avenue, Suite N-641
Rye Brook, New York, 10573

# TABLE OF CONTENTS AND AUTHORITIES

**PRELIMINARY STATEMENT**..................................................................1
**ARGUMENT**............................................................................................1
   1. **NON-SETTLING DEFENDANTS ARE NOT REQUIRED TO PAY FOR THE STATE'S MISCALCULATION**..............................1
   2. **TRITON ALLEGEDLY POSSESSED "ACUTAL KNOWLEDGE" THAT ITS DISPOSAL CONTAINED HAZARDOUS SUBSTANCES**..3
   3. **THE STATE'S RELIANCE ON *PANEX INDUSTRIES* IS MISPLACED**.......................................................................5
   4. **THE STATE'S GPS-DRIVEN "TRUCKLOAD" ALLOCATION DOES NOT HOLD UP**...........................................................7
   5. **THE STATE'S NATURAL RESOURCES DAMAGES METHODOLOGY IS FLAWED**..................................................7
**CONCLUSION**....................................................................................10

## CASES CITED

*United States v. Aerojet Gen. Corp.,*
  606 F.3d 1142 (9th Cir. 2010)...........................................................1
*Arizona v City of Tucson,*
  761 F3d 1005 (9th Cir 2014).............................................................1
Town of Islip v. Datre,
  245 F. Supp. 3d 397 (EDNY 2017)...................................................4
*New York v Panex Indus.,*
  2000 US Dist LEXIS 7913 (WDNY June 5, 2000, 94-CV-0400E(H))
*United States v. Cannons Engineering Corp.,* ...................................5
  899 F.2d 79 (1st Cir. 1990)................................................................5
*United States v. George Trucking, Inc.,*
  34 F.3d 1081 (1st Cir. 1994)............................................................. 5

## PRELIMINARY STATEMENT

M&Y Developers Inc. and New York Major Construction Inc. (collectively referred to herein as the "Objecting Defendants") object to the entry of the proposed consent decree resolving the State's claims against Defendant Triton Construction Company, LLC ("Triton").

Objecting Defendants have standing, as non-settling PRPs, to intervene in challenging the proposed consent decree, pursuant to both Federal Rule of Civil Procedure 24(a)(2) and CERCLA § 113(i). The proposed Triton settlement contemplated by the consent order involves a matter in which the Objecting Defendants have a protectable interest (i.e. the right to seek contribution from Triton) and, as such, the entry of the consent order would substantially impair Objectifying Defendants' ability to protect that interest. *United States v. Aerojet Gen. Corp.,* 606 F.3d 1142, 1150-53 (9th Cir. 2010).

There is more than one compelling reason why the Court should refuse to enter the consent decree settling the State's case against Triton. Perhaps most compelling is that the State is believed to have made an arithmetic error in determining Triton's settlement share. Having made this miscalculation, the State is now effectively requesting that the Court make the non-settling defendants pay for the State's mistake. Requiring the non-settling defendants to pay for the State's mistake would be grossly unfair and undermine CERCLA's requirement that district courts engage in meaningful substantive reviews of consent decrees to determine if there exists a rational relationship, based on sufficient evidence, between the proportion of liability attributable to each settling party and the proportion of total costs to be paid by such party under the agreement. *Arizona v City of Tucson*, 761 F3d 1005 (9th Cir 2014).

## ARGUMENT

**1. Non-Settling Defendants Are Not Required to Pay for the State's Miscalculation**

1

From the State's correspondence with the Court, it can be deduced that the State discovered its mistake in calculating Triton's settlement share sometime between its September 21, 2018 letter (ECF No. 344), which accompanied the filing of the proposed consent decree, and its subsequent letter, dated October 12, 2018 (ECF No. 350). In the initial letter, the State represented to the Court that the proposed settlement payment "…as a percentage of the State's total damages, roughly correlates to the number of truckloads of construction waste brought to the Park from Triton's construction site, as compared with the total number of truckloads of construction waste brought to the Park from all the construction sites alleged in the complaint. *See* Complaint ¶ 141". (ECF No. 344 at p. 3)

In its subsequent letter, dated October 12, 2018, the State felt it incumbent to "clarify the manner in which the State calculated the amount of the agreed-upon settlement payment with Triton" (ECF 350 at p.1). In pertinent part, the lawyer for the State posited:

> I explained in my prior letter that the amount of the State's settlement with Triton roughly correlated to the number of truckloads brought to the Park just from Triton's construction site. See ECF No. 344 at p.3. We subsequently realized that the actual settlement amount agreed upon with Triton reflects less than the full number of truckloads of waste brought to the Park from Triton's construction site." (ECF 350 at p. 1)

What the State represents to the Court as being *less than the full number of truckloads* may actually be closer to *one-half of the full number of truckloads*, an enormous deviation from its purported settlement calculus. The State further acknowledges its error in its Memorandum of Law in Support of the State's Motion Requesting Entry of the Consent Decree in a footnote. (Mem. at p. 6) and in Matthew J. Sinkman's Declaration in Support of the State's Motion, dated November

2

20, 2018 ("Sinkman Decl.") ¶ 12.[1]

The State pooh-poohs Objecting Defendants' concerns about the prejudice of the Triton settlement as a result of the State's own miscalculation of the proper settlement, and argues that *any* settlement, despite the its mistake, should pass the Court's scrutiny because Triton should obtain some benefit by being the first defendant to enter into a settlement with the State. This logic, however, fails to take into account the significant prejudice this would cause Objecting Defendants, against whom the State has failed to identify even a single specific hazardous substance that came from their sites and ended up at the Park anywhere in its pleadings. Moreover, the State's argument, if accepted, would improperly elevate a "first-to-settle" factor to being the sole factor that the reviewing court need consider.

### 2. Triton Allegedly Possessed "Actual Knowledge" that its Disposal Contained Hazardous Substances.

Should the consent order be approved, non-settling defendants would lose their rights of contribution against a party that the State's complaint alleges is responsible for the disposal of twelve shipments at the park that contained hazardous substances including "barium, chromium,

---

[1] William A. Ruskin, counsel for Objecting Defendants, emailed Matthew Sinkman on November 26, 2018 to obtain some clarification concerning the Triton settlement discrepancy. In pertinent part, he wrote to Mr. Sinkman:

"As this will become a point of discussion on the State's pending motion, I want to ensure that the issue is presented correctly to the Court. Was the State's error due to undercounting Triton's truckloads to the Park or was it an arithmetic error in computing the per truckload settlement share? (or something else?) It is my understanding from our conversation earlier this month that the State's miscalculated the Triton share by one-half, but I would appreciate your confirming this. I would rather provide the Court the correct understanding of what occurred rather than speculating about how this occurred. We can both agree that clarity is preferable to confusion. I am drafting a response to the State's submission and would appreciate your prompt attention to this request. Thanks so much."

Mr. Sinkman declined to provide the requested clarification responding that day that "we stand by our motion papers as written."

3

copper, lead, zinc, fluoroanthene, and asbestos". (Complaint 149).[2] In striking contrast to these specifically pled allegations concerning Triton's disposal of multiple hazardous substances, the Complaint contains no allegations concerning the disposal of any specific hazardous substances by Objecting Defendants. Moreover, the State's allegations against Triton include the claim that Triton --based on its receipt of environmental reports-- possessed *actual knowledge* that the substances leaving the Triton site were hazardous. (Complaint 150).

In *Town of Islip v. Datre*, 245 F. Supp. 3d 397 (E.D.N.Y. 2017), a case arising from almost identical facts as in the instant case, Hon. Joseph F. Bianco ruled that an arranger defendant (such as Triton or the Objecting Defendants in the case at bar) "*must have known or should have known that the material in question was hazardous*" and that mere knowledge of facts leading to disposal alone is insufficient to impose CERCLA liability" (*emphasis added*). Based on Judge Bianco's analysis, the State has a much stronger liability case against Triton than it does against Objecting Defendants. This key fact should be considered by this Court in evaluating whether to approve the proposed consent decree. From a pleading standpoint, Triton is one of only a handful of defendants against whom the State has seemingly established the required "nexus" between hazardous substances at a project site and the hazardous substances identified at the Park. Thus, Triton has greater 'liability exposure' than Objecting Defendants and far greater 'damages exposure' than Objecting Defendants. Given these circumstances, it is not appropriate to approve the proposed consent decree.

---

[2] The hazardous substances alleged to be present on the Triton site are alleged by the State to be among the particularly bad actors subsequently identified in soil samples at the Park (Complaint 88-91), most notably asbestos, lead, zinc and chromium.

4

### 3. The State's Reliance on *Panex Industries* is Misplaced

The State relies on *New York v Panex Indus.*, 2000 US Dist LEXIS 7913 (WDNY June 5, 2000, 94-CV-0400E(H)) for the proposition that CERCLA requires an acceptable measure of comparative fault, apportioning liability among settling parties according to some rational (if necessarily imprecise estimates) of how much harm each potentially responsible party has done. (Memo at 9). Consequently, the State argues, the test that this Court should apply in determining whether the consent order should be entered is whether the State's method of apportioning liability is "plausible", citing *United States v. Cannons Engineering Corp.*, 899 F.2d 79 (1st Cir. 1990) (Mem. at p. 9).

Objecting Defendants respectfully submit that the State's concoction of a merely "plausible explanation" to justify the Triton settlement does not properly set the bar that the State must meet and would, if accepted by the Court, make a travesty of CERCLA policy and case law. Omitted from the State's Memorandum is the Panex court's admonition that "this Court must be especially cautious not to "rubber-stamp" every settlement negotiated by the government…" *Panex Indus.*, at *4 (citing *United States v. George Trucking, Inc.*, 34 F.3d 1081 (1st Cir. 1994).

The State's reliance on the *Panex Indus.* holding, without providing the context of the facts and circumstances that resulted in that court's ruling, is troubling. Facts matter. An examination of the judicial considerations behind the Panex ruling makes it abundantly clear that the State, in the instant case, is not justified in asking the Court to approve the Triton settlement on the same basis. Set forth here are the three key differences between this case and *Panex Indus*:

- The consent decrees under review in *Panex Indus.* were momentous. They provided for the "*transfer to the State of $3,016,375 from the settling private parties and an estimated in-kind contribution of $2,388,000 from the settling municipalities. Considering the State's estimated cost of cleanup--$9,883,000--, such settlements would recapture over fifty-percent of the costs incurred at the Site.*" (emphasis added). *Panex Indus* *7-8.

5

By comparison, in the case at bar, the Triton settlement correlates to about six out of 171 truckloads of waste (Mem. at p. 5-6) without even accounting for the CERCLA liability of the multiple non-settling defendants in the case whose liability cannot even be addressed by a truckload formula. Thus, far from having the enormously salutary effect of a multi-million dollar settlement in *Panex Indus.*, involving multiple settling parties, the Triton settlement is trivial and inconsequential from the perspective of bringing this litigation to a close and saving New York taxpayers any money.

- Unlike the case at bar, the negotiation of the *Panex Indus* settlements was brought to fruition only after two years of negotiation and with the active participation of the court. Non-settling parties had every opportunity to participate in those negotiations.

  In contrast, the Triton settlement was negotiated privately between the State and Triton's counsel. Moreover, it is inaccurate for the State to give the impression that Triton should catch a break because it alone was willing to settle. In August 2017, the Objecting Defendants attended a settlement meeting at the State's offices in lower Manhattan along with counsel for five other "arranger" defendants. Although a settlement was not reached at that meeting or in the discussions that followed, there have been ongoing settlement discussions between the State and various defendants. Triton's willingness to settle should not be overstated in light of ongoing discussions with multiple other defendants concerning settlement.

- Both the parties and the court in *Panex Indus.* had a good idea of what the case involved, unlike in the case at bar, in which discovery has been stayed. In *Panex Indus.*, the core documents included the New York State Hazardous Waste Survey, dated October 6, 1976 ("Waste Survey"), which discussed Rochester Button's continuous disposal of 1,320 gallons of TCE sludge at the Site every year, and the declaration submitted by the environmental engineer who supervised completion of the investigation of the Site and design of the remedy.

  The State's allocation formula was predicated on some 80 tons of TCE being deposited at the Site by Rochester Button between 1964 and 1980. Even with this level of information, the court deemed the State's allocation of fault "somewhat specious". Despite this determination, the court approved the settlement largely because of what it characterized as "countervailing considerations" (not present in the case at bar) "such as the environmental and monetary savings inherent in approving the settlements..." *Panex Indus* *14.

These "countervailing considerations" carried the day in Panex, not the purported "plausibility" of the State's settlement allocation formula. Those "countervailing considerations"—a settlement of over $5 million by the majority of the defendants in the case after two years of protracted negotiation-- are not present in the case at bar.

6

### 4. The State's GPS-driven "Truckload" Allocation Does Not Hold Up

Counsel for Objecting Defendants has not been able to identify a single reported decision in which GPS data plays a role in a CERCLA settlement allocation without explicit corroboration from a human witness. According to the State, GPS data identified "trucks" leaving various construction sites in the New York Metropolitan Area and traveling to the Park. However, GPS data does not inform this Court about the storage capacity of the GPS-tracked vehicles or how much volume of material each vehicle can transport. Further, GPS data does not inform the Court about whether the vehicles were empty or half-full when they arrived at the work sites, or how about much material was placed in a vehicle on any one occasion. Moreover, the GPS data does not inform the Court about whether the vehicles dropped off material along the way, or at other intermediate sites, before reaching the Park.

How big were the 12 Triton trucks that made these shipments? All that is known is that the Triton trucks allegedly carried asbestos, lead and other hazardous substances, harmful to human health and the environment, from the Triton construction site to the Park.

### 5. The State's Natural Resources Damages Methodology is Seriously Flawed

Contrary to what is set forth in the State's "Estimate of its Natural Resource Damages," (Sinkman Decl. ¶ 1-9), the 2010 Trust for Public Land report, *"The Economic Benefits and Fiscal Impact of Parks and Open Space in Nassau and Suffolk Counties, New York"* (the "Report"), cannot be assigned the blame for the State's flawed NRD damages analysis. Although the State's discussion of its damages assessment permits the inference that the Report provides the "plug-ins" to the State's damages equation, the Report does no such thing. First, the Report does not indicate that the estimated value of a single visit to the Roberto Clemente Park is $3.98 as alleged in the Sinkman Declaration. In fact, the Report does not mention this Park or any of the hundreds of

7

other parks located through Nassau and Suffolk. No individual park is mentioned in the Report unless it is mentioned in a photo credit. Thus, it is the State, not the Report, that is estimating the value of a visit to the Roberto Clemente Park, based upon a chart provided in the Report for another purpose.

Second, in any calculation of the per visit value of the Park, the State fails to consider its own understanding of how dilapidated this Park was *before* the alleged disposal activity took place. The "soccer fields had deteriorated by 2013 due to heavy use" (Complaint 71). The "swimming pool had been closed for nearly a year when the Park was closed on May 5, 2014…" (Complaint 72). The physical condition of a park undoubtedly influences its desirability and use by community members, particularly when there are dozens of other nearby parks to choose from. However, the State does not give any weight to the Park's poor condition in assessing its value to Suffolk and Nassau residents.

Third, the State incorporates into its damages equation the entire population of Queens and Kings Counties, which, in 2010, had a combined estimated population of 7.56 million (Sinkman Decl. ¶ 6). The Report only discusses park use in Suffolk and Nassau. It is unclear why the State does this. However, it is a further indication that the State is straying from the very report it claims to be relying on in calculating NRD.

Fourth, the State estimates that 61,000 people lived in Brentwood in 2010 (no dispute), but then calculates that each resident in Brentwood made sixty trips to parks per person or a "*total number of 3,660,000 park trips per year by each Brentwood resident.*" (Sinkman Decl. ¶ 8). When do Brentwood residents find time to sleep and go to work? All of their time appears to be spent visiting parks!

Further, the State purportedly then discounts its damages assessment by admitting that

8

there are "twelve substitute parks" that make up for residents' loss of use of the Park. Thus, the State divides the 3,660,000 annual park trips by Brentwood residents by the number of all of these parks to come up with the total of 281,538 trips per year to each of these parks, including the Park. (Sinkman Decl. ¶ 9). Here is yet another example of how the State's damages equation goes off the rails. The State apparently assumes that Brentwood, much like medieval Siena or Florence, is a self-contained, walled city. That is why the State only considers other Brentwood parks as "substitute parks." Heaven forbid that a Brentwood resident would consider a visit to a nearby park in Central Islip or North Bay Shore. Why then, does the State not consider any of the dozens of parks in surrounding communities as "substitute parks?"

The State relies on the U.S. Army Corps of Engineers' ("USACE") "Unit Day Values for Recreation" for different types of facilities. (Sinkman Decl. ¶ 3). An examination of the USACE's methodology, however, reflects that the USACE considers reasonable travel distances to recreation facilities in increments of 30 minutes, 45 minutes, and 60 minutes. Therefore, applying the USACE's methodology, there are not only 12 substitute parks, but hundreds of parks within a half-hour or one-hour drive that the State should consider as "substitute parks."

Objecting Defendants respectfully submit that before submitting a CERCLA settlement allocation for this Court's review and approval in connection with the proposed Triton settlement, the State should be required to provide a cogent damages analysis based upon a *Daubert*-compliant methodology. The speculative and illogical NRD discussion provided by State in the Sinkman Declaration permits the inference that evidence of the State's poor arithmetic extends well beyond its calculation of the Triton settlement share.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that the Court should deny the State's motion in its entirety and not approve the proposed consent decree.

        LAW OFFICE OF WILLIAM A. RUSKIN, PLLC
        Attorneys for Defendants
        M&Y DEVELOPERS INC.
        NEW YORK MAJOR CONSTRUCTION INC.

By: /s/William A. Ruskin
     800 Westchester Avenue, Suite N-641
     Rye Brook, New York 10573
     Telephone: (914) 231-0360
     Fax: (914) 231-0361
     Email: wruskin@wruskinlaw.com

Dated: Rye Brook, New York
       December 10, 2018