UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BASIL SEGGOS, as Commissioner of the New York State Department of Environmental Conservation and Trustee of New York State's Natural Resources, and the STATE OF NEW YORK,

        Plaintiffs,

- against -

THOMAS DATRE, JR.; CHRISTOPHER GRABE; 5 BROTHERS FARMING CORP.; DAYTREE AT CORTLAND SQUARE INC.; IEV TRUCKING CORP.; COD SERVICES CORP.; ALL ISLAND MASONRY & CONCRETE, INC.; BUILDING DEV CORP.; DIMYON DEVELOPMENT CORP.; NEW EMPIRE BUILDER CORP.; CIPRIANO EXCAVATION INC.; TOUCHSTONE HOMES LLC; SAMS RENT AND CONSTRUCTION; SAM'S RENT, INC.; NEW YORK MAJOR CONSTRUCTION INC.; EAST COAST DRILLING NY INC.; TRITON CONSTRUCTION COMPANY, LLC; SUKRAM AND SONS LTD.; M & Y DEVELOPERS INC.; "JOHN DOE"; ATRIA BUILDERS, LLC; WOORI CONSTRUCTION INC.; PLUS K CONSTRUCTION INC.; NY FINEST ENTERPRISES INC.; MONACO CONSTRUCTION CORP.; ALEF CONSTRUCTION INC.; 158 FRANKLIN AVEN. LLC; LUCIANO'S CONSTRUCTION, INC.; ILE CONSTRUCTION GROUP, INC.; EAST END MATERIALS INC.; SPARROW CONSTRUCTION CORP.; CIANO CONCRETE CORP.; FREEDOM CITY CONTRACTING CORP.; and TOTAL STRUCTURE SERVICES INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case 2:17-CV-02684-SJF-ARL

**FEE APPLICATION OF THE SPECIAL MASTER**

1

I.   **Introduction**

This fee application is respectfully submitted pursuant to the Memorandum and Order issued by the Court on August 5, 2019.

This Court's Order dated November 27, 2017 (the "Initial Order") appointed me as special master to: (i) prepare and issue an Omnibus Report and Recommendations concerning certain motions to dismiss and/or for judgment on the pleadings that had been filed by several defendants; and (ii) in the event the matter were to proceed, "manage and supervise the discovery phase of this case." Dkt. 294 at 3. Several parties objected to the Initial Order, arguing, among other things, that resolution of the issues raised by the motions does not require the specialized knowledge of a special master and that the cost of my services would impose an unreasonable burden upon the parties. The Court responded to those objections by Order issued on December 19, 2017. Mindful that "a master should only be appointed to oversee pretrial matters 'when the need is clear,'" the Court found there to be no clear need for for a special master to oversee discovery under the "current procedural posture of this litigation," and reduced the scope of my duties accordingly. *Id.* However, the Court found there to be such a need "with respect to the dispositive motion practice presently pending before the Court." Dkt. 304 at 15.

It is reasonable to infer that the Court appointed a special master due to the unusual nature of the legal claims in this action, the large number of defendants and the multiplicity of motions to dismiss pending before the Court at the time of the appointment. The claims in this action are brought by the State of New York and Basil Seggos, the Commissioner of the New York State Department of Environmental Conservation, for damages arising from the closure of a public park while hazardous substances allegedly disposed of at the park by the defendants were remediated. Plaintiffs neither own nor operate the park; nor do they allege that they remediated the environmental conditions allegedly caused by the defendants, or incurred

2

any expense in doing so. Rather, they are seeking "natural resource damages" as the alleged trustee of the park under the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and damages under the common law as *parens patriae* to compensate the public for the loss of the use of the park during the period of the remediation. Moreover, the Complaint seeking such damages contains no allegation that the defendants knew, or had reason to know, that the waste disposed of at the park contained a "hazardous substance" as CERCLA defines that term. As discussed below, the motions made by the defendants raised numerous complex issues keyed to the unusual nature of plaintiffs' claims.

The case is further complicated by the fact that the Town of Islip – the governmental entity that *does* own and operate the park – had previously commenced an action in this Court against many of the same defendants on much the same set of facts, seeking to recover the costs it had incurred in remediating the environmental conditons under CERCLA. *Town of Islip v. Datre*, Case 2:16-cv-02156-JFB-AYS (the "Islip Action"). The Court in that case had dismissed those claims on the basis of a statutory interpretation having a direct bearing on the disposition of defendants' motions here. For the reasons set forth in the Omnibus Report and Recommendations, I have recommended that the Court not follow this directly relevant precedent. That conclusion did not come lightly: as explained below it resulted from a painstaking analysis of the Court's decision in the Islip Action, the statutory language and objectives of CERCLA, and relevant caselaw.

## II. Special Master Fees and Expenses

The Initial Order provides that "the special master shall be paid $664 per hour … and shall be reimbursed for all reasonable expenses incurred." Dkt. 294 at 4. The Court

3

anticipated that I would be assisted by Philip E. Karmel, a partner at my law firm, whose hourly rate was set by the Court at $620. *Id.* The order authorized me to draw upon the services of other personnel at the firm, with their time billed at a 20 percent discount from the firm's customary market rate. *Id.* at 5. The Initial Order provided that fees and expenses "shall be promptly paid" by the parties on a *pro rata* basis. *Id* at 4.

I issued two sets of invoices to the 23 active parties over the course of the approximately two and one half month period that I served as special master. The first invoice, issued on February 20, 2018 and covering work performed during a few days in December, 2017 and the month of January, 2018, was in the amount of $44,625.22. *See* Exhibit A to the Declaration of Elizabeth T. Garvey (the "Garvey Dec"). The second invoice, covering the remainder of the work performed in preparing the Omnibus Report and Recommendations during February and March 2018, was in the amount of $130,484.98, and was issued on March 12, 2018. *See* Garvey Dec., Exh. C. The contemporaneous time entries upon which these invoices were based are attached as Garvey Dec., Exhs. B (for the February 20 invoice) and D (for the March 12 invoice), respectively. Also attached is a billing summary of the total amount of fees and expenses charged for the matter. *See* Garvey Dec., Exh. G. As documented in that summary, the total amount billed to the parties was $175,110.27. That amount reflects a 20 percent discount from Bryan Cave's customary market rate, as well as $11,698 in write-offs of time and expenses. *See* Garvey Dec. Exhs. B, D, E and F.

As can be seen from the invoices and supporting pro formas, I performed the majority of work on this matter – billing 167.2 hours to the preparation of the Omnibus Report and Recommendations over the course of more than two months; Philip Karmel provided substantial assistance to me in this work, billing 69.1 hours to report preparation; and an

4

associate named Matias R. Gallego-Manzano performed basic research, spending 69.3 hours in doing so. However, being aware that the Court engaged me as Special Master (and authorized Mr. Karmel's assistance) due to our level of experience in environmental law, I wrote off (*i.e.*, did not bill) slightly more than 22 hours of Mr. Gallego-Manzano's time.

In accordance with the Initial Order, the amounts due were billed to each of the 23 parties on a *pro rata* basis, with each party billed in a separate invoice for $1,940.23 for the February bill; and $5,673.26 for the March bill, for a total share of $7,613.49 assigned to each party. Seven of the 23 parties have paid the February invoice. Three parties – the two plaintiffs and Triton Construction Company – have paid both invoices in full. Thus, an uncollected balance of $144,508.88 has been outstanding in this matter since March, 2018.

**III.    Discussion of Issues Concerning the Special Master Fees**

As noted above, the hourly rates for services performed by Mr. Karmel and me in preparing the Omnibus Report and Recommendations were specified in the Initial Order. Dkt. 294 at 4. The order also specifically authorized our billing for other firm professionals at levels reflecting a 20 percent discount from the firm's customary commercial rate. Bryan Cave's invoices reflect the rates set in the Initial Order. *See* Garvey Aff., Exhs. A and C. During the period allowed by the Court for the filing of objections, no party challenged the hourly rates specified in the Initial Order as being unreasonable. Accordingly, we proceeded with our work on the basis of the hourly rates the Court had established, and those rates should not be in issue at this late date.[1/] Accordingly, I will focus the discussion below to the time devoted to preparing the Omnibus Report and Recommendations.

---

[1/]    Nevertheless, it bears noting that the rates set for Mr. Karmel and me represented a significant discount from the firm's customary commercial rates at the time, and are reasonable for lawyers practicing in large law firms with our level of experience in environmental law. I have practiced environmental law for more than 45 years, have served as special master in another federal case,

5

As noted above, I spent slightly more than a solid month of billing time in preparing the Omnibus Report and Recommendations, while Mr. Karmel devoted the equivalent of a week and a half of billing time to this matter. Our other professional staff provided basic research and report production (*e.g.*, cite checking) services. Certain parties have raised concerns with respect to the seniority level (and consequent billing rate) of the professionals shouldering the bulk of the work in preparing the report. Dkt. 320 at 4. But the Court appointed me to serve as special master, and authorized Mr. Karmel to provide his assistance, precisely *because* of our level of experience with the sorts of issues raised by the motions. Thus, it would have been inappropriate to turn a large measure of the work on the difficult issues raised in this case over to less experienced junior lawyers in our office.[2/]

Moreover, notwithstanding the characterization by some parties, the numerous issues addressed in the Omnibus Report and Recommendations were a far cry from straightforward. Those issues raised complex questions under CERCLA, the New York statute of limitations, standing, principles of pleading and related evidentiary issues as to facts of which this Court may take "judicial notice," the public trust doctrine and the common law of nuisance and negligence. As I viewed my duties, I was to unravel the complexities raised by the parties, prepare a concise discussion of the relevant principles and apply those principles to come up with a specific recommendation as to how the Court might resolve each of the issues before it.

---

and mediated the settlement of a CERCLA cost recovery action involving claims against multiple leather tanners in New York State. I am a member of the American College of Environmental Lawyers and have been listed as one of a handful of "Band 1" New York environmental lawyers in *Chambers USA*. Mr. Karmel has practiced environmental law for more than 30 years, and is an accomplished litigator with extensive experience in CERCLA actions, having litigated CERCLA lawsuits in New York, Colorado, Montana, Pennsylvania, Texas and Virginia.

[2/] As noted above, Mr. Manzano devoted slightly more than 69 hours of time to the matter, but with write-offs the parties were charged for about 47 hours of his time.

The level of effort needed for the diligent performance of this task is well illustrated by the issue raised by certain defendants alleged to be liable as parties who had "arranged" for the disposal of hazardous waste at the park. The defendants argued that the Complaint failed to state a claim under CERCLA because it does not allege that the defendants knew or had reason to know that the waste disposed of at the park contained a "hazardous substance." The Court in the Islip Action had dismissed the Town's claim for remedial costs for failing to include that allegation, concluding – in a carefully reasoned decision – that knowledge is an essential element for "arranger liability" under CERCLA. In coming to this conclusion, the Court cited language in *Burlington Northern and Santa Fe Ry. v. United States*, 556 U.S. 599 (2009), that on its face seemed to support that determination. My recommendation to the contrary was the product of a careful analysis of the CERCLA caselaw on arranger liability, the fundamental issues before the Court in *Burlington Northern*, and the numerous other considerations discussed in the Omnibus Report and Recommendations.

The issue of arranger liability was just one of several difficult issues I sorted out in developing my recommendations. The defendants also launched substantive challenges to:

-- the plaintiffs' standing to seek natural resource damages under CERCLA for the temporary closure of a public park that they did not own, operate or remediate. My consideration of Defendants' arguments required careful analysis of several issues under CERCLA, including whether caselaw requires the State to own or control a natural resource to be entitled to damages for its loss, the interplay between CERCLA and the public trust doctrine applicable to parks in New York, and whether restoration damages are required as a precondition to a claim for the "loss of use" damages plaintiffs are seeking here;

-- plaintiffs' standing to bring a claim for damages on behalf of the public under the common law for a public nuisance where the nuisance already had been abated, raising an issue of first impression as to whether the State of New York may bring a *parens patriae* suit for damages under the common law of public nuisance;

-- the timeliness of the CERCLA claims, requiring me to identify the triggering event under the statute by distinguishing between an "injury" to a natural resource and the "loss" of the resource; whether constructive knowledge rather than actual knowledge is sufficient for "discovery" of the loss; and whether the plaintiffs' claims, as specified in the Complaint, were "clearly" time-barred;

-- the timeliness of plaintiffs' common law claims, requiring that I assess the merits of plaintiffs' argument that the three year statute of limitations under New York law is inapplicable because they are seeking damages to a "usufructory interest" on behalf of the public rather than property damage, whether the harm caused to the park was latent or patent, and how CERCLA's preemption provision affects the statute of limitations for the common law claims;

-- the adequacy of the specific allegations against each of the moving defendants in stating a claim under CERCLA and the common law; and

-- application of the first-to-file rule under the unique circumstances of this case.

Rather than recapping my work on these, and the other issues raised by the motions, I refer the Court to the Omnibus Report and Recommendations to consider whether I addressed them with the diligence and care that they merited. I believe that the level of effort expended was commensurate with the difficulty of the issues I addressed, and was eminently reasonable.

## IV. Conclusion

The work performed in preparing the Omnibus Report and Recommendations – which under the Initial Order would cost each defendant $7,613.49 – assisted in the efficient and cost-effective resolution of this case. In particular, the meticulous analyses presented in the report will provide the parties with a roadmap for the subsequent discovery phase of this litigation (should it come to that point upon the Court's determination of the timeliness of the plaintiffs' CERCLA claim), which will enable them to focus their efforts on developing the facts critical to its ultimate disposition. Moreover, my hope is that the report will be of substantial assistance to the Court in any motion practice that ensues upon the completion of the limited discovery that is now ongoing. It was an honor to serve the Court as Special Master in this case.

Dated: New York, New York
September 12, 2019

*J. Kevin Healy*