UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BASIL SEGGOS, Commissioner of the New York State
Department of Environmental Conservation
and Trustee of New York State's Natural Resources,
and the STATE OF NEW YORK,

    Plaintiffs,

        -against-

THOMAS DATRE, JR. et al.,

    Defendants.

---

**Civil Action No.
2:17-cv-02684-MKB-LB**

**DECLARATION OF MATTHEW J. SINKMAN IN SUPPORT OF THE STATE'S MOTION FOR APPROVAL OF CONSENT DECREES**

---

**I, Matthew J. Sinkman,** declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an Assistant Attorney General in the New York State Office of the Attorney General, attorney for plaintiffs Basil Seggos, as Commissioner of the New York State Department of Environmental Conservation and Trustee of New York State's Natural Resources, and the State of New York (together, the "State") in the above-captioned matter. I submit this declaration in support of the State's motion requesting approval of a consent decree settling the State's claims against Atria Builders, LLC; Triton Construction Company, LLC; Alef Construction Inc.; 158 Franklin Ave. LLC; and Monaco Construction Corp.; a separate consent decree settling the State's claims against IEV Trucking Corp.; and another separate consent decree settling the State's claims against Touchstone Homes LLC. The proposed consent decrees are attached hereto as Exhibits A, B, and C, respectively.

2. The State negotiated these settlements based on its estimates of defendants' liability as set forth in the calculations described below and in the accompanying Declaration of John D. Davis.

**Overview of the State's Total Damages**

3. For purposes of settlement, the State has estimated its total natural resource damages at $3,902,335. The basis for that calculation is (1) the estimated number of visits to Robert Clemente Park (the "Park") that the public would have made during the approximately three years it was closed for a cleanup, multiplied by (2) the estimated monetized value of those visits. *See* ECF No. 1, Complaint ¶¶ 87, 101. The Davis Declaration provides further detail about that calculation.

**Apportionment of the State's Damages Among Defendants for Settlement**

4. While the State alleges all defendants are jointly and severally liable for the State's damages, *id.* ¶¶ 230, 234, 238, the State apportioned the total damages among the defendants based on relative fault for purposes of settlement. The State also rounded its total damages estimate down slightly to $3,900,000.

5. Apportionment of the damages among the defendants required a two-phase methodology because not all the defendants are solvent. In the first phase, the State calculated the share that each defendant would pay if all the defendants were solvent. In the second phase, the State allocated the shares that had been apportioned to the insolvent defendants—so-called "orphan shares"—to the solvent defendants, as is appropriate because all the defendants are presumed to be jointly and severally liable.

6. **Each defendant's share without taking insolvency into account.** The State's settlement formula begins by apportioning the damages among the three categories of defendants

2

in this case: (1) construction contractors who generated waste and arranged for that waste to be dumped in the Park; (2) waste brokers who arranged for the generators' waste to be transported to and dumped in the Park; and (3) transporters who hauled the waste to the Park where they dumped it. *Id.* ¶¶ 8-43.

7. The State apportioned its damages between the construction contractors and the brokers/transporters on a two-to-one basis. The State used that apportionment because the contractors are responsible for generating the construction waste that was dumped at the Park and that needed to be cleaned up, while the brokers/transporters arranged for, transported, and disposed of the waste. *Id.* Additionally, as discussed below, there appear to be many more solvent contractors than solvent brokers/transporters. Under the two-to-one apportionment, the generators are liable for $2,600,000 in damages and the brokers/transporters are liable for $1,300,000.

8. The State's formula allocates damages among the contractors based on the alleged number of truckloads of waste brought to the Park from their respective construction sites. The State alleges that a total of 171 truckloads of waste were transported to the Park. *See id.* ¶¶ 104, 117, 125, 133, 141, 152, 161, 169, 177, 187, 195, 202, 211. The State divided the contractors' liability of $2,600,000 by 171 total truckloads, which yields liability of $15,205 per truckload.[1]

9. The State apportioned $1,300,000 evenly among the brokers/transporters because those defendants worked in various combinations to dispose of the waste, but discovery has not

---

[1] For simplicity, this declaration presents monetary values generated by the State's formula as rounded to the nearest dollar amount, although the formula itself uses unrounded values.

yet taken place that would clarify the precise role of each entity in that scheme. There are six brokers/transporters, which yields liability of $216,667 for each broker/transporter defendant.

10. **Each defendant's share taking insolvency into account.** Once the State had determined each defendant's share without taking insolvency into account, the State recalculated the shares taking it into account. The State took insolvency into account by calculating the sum of the shares that would otherwise be paid by insolvent defendants—the orphan shares—and then apportioning that sum to the remaining defendants.

11. When the State initially calculated orphan shares, it had reason to believe that both contractor defendants at the same construction site at 867-869 45th Street in Brooklyn Complaint—Freedom City Contracting Corp. and Total Structure Services Inc., *see* Complaint ¶¶ 42-43—were insolvent because they defaulted in this action, ECF No. 238, and, as a result, there were no defendants available to pay that site's share of the damages. The site's share of the damages is $30,409 because the State has alleged that two truckloads of construction waste were hauled to the Park from there, Complaint ¶ 211, at $15,205 per truckload under the State's formula. After the State devised its settlement formula, it learned that both contractor defendants at a second site—Plus K Construction Inc. and Woori Construction Inc. at 209-43 45th Road in Queens, *see* Complaint ¶ 172—may also be insolvent because Woori had already defaulted, ECF No. 238, and the Court allowed Plus K's attorney to withdraw as counsel, ECF No. 430. As discussed below, the State did not recalculate orphan shares for the defendants with whom it was already negotiating but recalculated them for Touchstone Homes LLC.

12. When the State calculated orphan shares, it had reason to believe that all the transporter defendants—Christopher Grabe, Thomas Datre, Jr., 5 Brothers Farming Corp., and Daytree at Cortland Square, Inc.— were insolvent and thus could not pay their shares of

4

$216,667 apiece. *See* ECF No. 238 (Clerk's certificate of default for Grabe); No. 338 (Order permitting attorney for Datre and 5 Brothers Farming to withdraw for lack of payment); No. 424 at 7 ¶ 7 (affidavit from an officer and shareholder of Daytree at Cortland Square that it lacks funds to pay its attorneys). The State is now aware that, even though Daytree at Cortland Square stated in this action that it was unable to pay its attorney, Daytree is actively litigating two cases in this Court: the Town of Islip's action for costs, C.A. No. 2:16-cv-02156-MKB-LB, and an action Daytree brought for defamation and other relief, C.A. No. 2:15-cv-02298-FB-AYS. The State has not adjusted its calculation of orphan shares for the purposes of the settlements that it already negotiated.

13. When the State initially calculated orphan shares, it was negotiating a settlement agreement with one of the broker defendants, COD Services Corp., and had reason to believe based on information provided by COD that COD had limited resources and would be able to pay only $30,000 in damages and not its full share of $216,667. The State and the Town of Islip subsequently entered into a joint settlement with COD under which COD agreed to pay $20,000 to the Town for cleanup costs and $20,000 to the State for natural resource damages. ECF No. 420-1. The State did not recalculate orphan shares for the settlements that it was already negotiating but, as discussed below, recalculated them for its settlement with Touchstone.

14. Thus, except for the Touchstone settlement, the orphan shares were $30,409 for two contractor defendants and $1,053,333 for four transporter and one broker defendant ($216,667 apiece less $30,000 to be paid by broker COD), for a total of $1,083,743.

15. Using the same two-to-one division already used, the State apportioned two-thirds of the orphan shares, or $722,495, to the construction contractors. That increased the liability of the solvent contractors from $2,600,000 to $3,292,086 ($2,600,000 plus $722,495 minus the

5

contractor orphan shares of $30,409 (which the $722,495 takes into account)). Dividing this total by 169 truckloads of waste brought to the Park (171 total truckloads minus 2 truckloads from the orphan site) results in liability of $19,480 per truckload.

16. The orphan shares used to calculate Touchstone's liability were higher because, as discussed above (¶ 11), by the time the State began negotiations with Touchstone, it had (1) learned that both contractors—Woori and Plus K—at the construction site at 209-43 45th Road in Queens were insolvent, and (2) settled with COD for $20,000 instead of $30,000, as it had anticipated. The orphan share for the Woori/Plus K site on 45th Road was $106,433 because the State has alleged that seven truckloads of construction waste were hauled to the Park from that site, Complaint ¶ 169, at $15,205 per truckload. That orphan share and the decrease in what COD paid increased the total orphan shares from $1,083,743 to $1,200,175 and the contractors' orphan shares from $722,495 to $800,117. That changed the liability of the solvent contractors to $3,263,275 ($2,600,000 plus $800,117 minus the contractor orphan shares of $30,409 and $106,433 (which the $800,117 takes into account)). As a result, the per-truckload liability increased to $20,144 (based on 162 trips after taking out the 9 trips made from the two orphan sites).

17. Under the State's truckload formula, a construction contractor can settle by paying its site's entire negotiated share or by joining with the other contractors at its site to pay that share.

18. Using the same two-to-one division already used, the State apportioned one-third of the orphan shares, or $361,248, to the brokers/transporters. That decreased the total liability of the brokers/transporters from $1,300,000 to $577,914 (1,300,000 plus $361,248 minus the broker/transporter orphan share of $1,053,333 (which the $361,248 takes into account) minus the

6

$30,000 expected to be paid by COD). Because IEV is the only solvent broker, the orphan shares increased its liability from $216,667 to $577,914.

19. Once the State had allocated shares to each defendant, it discounted its opening offers to defendants by fifty percent based on the litigation risk to the State. Those risk factors include (1) a motion for summary judgment against the State based on the statute of limitations remains pending, and (2) the State's estimate of natural resource damages was prepared by a staff scientist in the Attorney General's office for settlement purposes only and, if this case goes to trial, the State anticipates that it will retain one or more experts to prove its damages and that defendants likely will retain their own experts to challenge the amount of those damages. To encourage early settlement—which will make funds available for the benefit of the Brentwood community more quickly—the State further negotiated each share that would be paid by the settling defendants. *Id*.

20. Based on this formula, the State and the settling defendants engaged in good-faith, arm's length negotiations. These negotiations were conducted by counsel except for Alef and 158 Franklin, whose counsel authorized the State to finalize the settlement directly with them after the State and their counsel had agreed on a settlement amount. The final settlement amounts are:

| **Settling Contractors** | **Number of Truckloads Transported** | **Per Truckload Value** | **Total Share With 50% Adjustment** | **Final Settlement** |
|---|---|---|---|---|
| Atria<br><br>(636 Louisiana Avenue, Brooklyn) | 13 (*see* Complaint ¶ 161) | $19,480 | $253,237 x .5 = $126,619 | $90,000 |
| Triton<br><br>(35-39 Cooper Square, Manhattan) | 12 (*see id.* ¶ 141) | $19,480 | $233,758 x .5 = $116,879 | $108,505 |
| Alef, 158 Franklin, and Monaco<br><br>(158 Franklin Avenue, Brooklyn) | 6 (*see id.* ¶ 177) | $19,480 | $116,879 x. 5 = $58,439 | $58,439 (jointly and severally) |
| Touchstone<br><br>(32 Sinclair Drive, Kings Point) | 22 (*see id.* ¶ 125) | $20,144 | $443,161 x .5 = $221,580 | $175,000 |
| **Settling Broker** | | | | |
| IEV | n/a | n/a | $577,914 x .5 = $288,597 | $175,000 |
| **Total** | | | | **$606,944** |

Dated: New York, New York
      May 26, 2021

                                        /s/ Matthew J. Sinkman