UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BASIL SEGGOS, as Commissioner of the New York
State Department of Environmental Conservation and
Trustee of New York State's Natural Resources, and
the STATE OF NEW YORK,

                  Plaintiffs,

    -against-

THOMAS DATRE, JR., CHRISTOPHER GRABE,
5 BROTHERS FARMING CORP.,
SAM'S RENT, INC., SUKRAM AND SONS LTD.,
WOORI CONSTRUCTION, INC., PLUS K
CONSTRUCTION, INC., NY FINEST
ENTERPRISES, INC., LUCIANO'S
CONSTRUCTION, INC., SPARROW
CONSTRUCTION CORP., CIANO CONCRETE
CORP., FREEDOM CITY CONTRACTING CORP.,
AND TOTAL STRUCTURE SERVICES, INC.[1]

                  Defendants.
------------------------------------------------------------------X

REPORT & RECOMMENDATION
17 CV 2684 (MKB)(LB)

**BLOOM, United States Magistrate Judge:**

       Plaintiffs Basil Seggos, as Commissioner of the New York State Department of Environmental Conservation and Trustee of New York State's Natural Resources, and the State of New York ("plaintiffs") move pursuant to Federal Rule of Civil Procedure 55(b)(2) for a default judgment in the amount of $4,020,959.71 against the following thirteen defendants who failed to respond or appear in this action: Thomas Datre, Jr., Christopher Grabe, 5 Brothers Farming Corp., Sam's Rent, Inc., Sukram and Sons Ltd., Woori Construction, Inc., Plus K Construction, Inc., NY Finest Enterprises, Inc., Luciano's Construction, Inc., Sparrow Construction Corp., Ciano Concrete Corp., Freedom City Contracting Corp., and Total Structure Services, Inc. ECF No. 532. For the following reasons, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted.

---

[1] Only the thirteen defendants who have defaulted in this action are listed in the above-caption. All the other defendants originally named in this action have resolved plaintiffs' claims against them.

1

# BACKGROUND

Plaintiffs move for a default judgment in this case brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and New York State common law claims. Plaintiffs' complaint, filed in May 2017, named more than two dozen individuals and entities as defendants. Plaintiffs alleged that defendants were responsible for coordinating the dumping of tens of thousands of tons of hazardous construction waste in the Roberto Clemente Park in Suffolk County which resulted in the park's closure for several years in order for the site to be remediated and cleaned-up. ECF No. 1. The Court assumes familiarity with the case history and therefore limits this Report to the facts relevant to plaintiffs' motion for a default judgment against the thirteen remaining nonresponsive defendants.[2]

Defendant Christopher Grabe was properly served with the summons and complaint in this action on June 26, 2017. ECF No. 45. Eight other corporate defendants were properly served on May 24, 2017.[3] ECF No. 34. These nine defendants never answered nor appeared in this action. The Clerk of Court noted entry of default against these nine nonresponsive defendants on September 8, 2017. ECF No. 238.

Defendant Thomas Datre, Jr. was properly served with the summons and complaint in this action on June 9, 2017. ECF No. 45. Defendants 5 Brothers Farming Corp., Plus K Construction Inc., and Sparrow Construction Corp., were properly served on May 25, 2017. ECF No. 34. These four defendants answered or otherwise responded to plaintiffs' complaint. On July 19, 2017, defendant Plus K Construction Inc. filed its answer and crossclaims. ECF No. 66. On August 21, 2017, Sparrow Construction Corp. filed its answer and crossclaims. ECF No. 186. On October 20, 2017, defendants

---

[2] The facts are drawn from the allegations in plaintiff's complaint which are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

[3] The eight corporate defendants served on May 24, 2024 were Sam's Rent, Inc., Sukram and Sons Ltd., Woori Construction Inc., NY Finest Enterprises, Inc., Luciano's Construction, Inc., Ciano Concrete Corp., Freedom City Contracting Corp., and Total Structure Services, Inc.

2

Thomas Datre Jr. and 5 Brothers Farming Corp. filed a letter to join in another defendant's motion to dismiss. ECF No. 267. Counsel for these four individual and corporate defendants withdrew from representing defendants and, despite the Court's warning, no new notices of appearances were filed on defendants' behalf.[4]

Plaintiffs moved to compel these four defendants to respond to discovery on December 16, 2022. ECF No. 492. Defendants failed to respond. Plaintiffs moved for sanctions and entry of defaults against these defendants for failing to comply with the Court's Orders. ECF No. 511. I recommended defaults be entered against these defendants on March 22, 2023 and the Court adopted my Report on June 28, 2023. ECF Nos. 517, 523.

Plaintiffs now move for a default judgment against these thirteen defendants. ECF No. 532. None of the defendants responded to plaintiffs' motion. The motion was referred to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B). ECF Order dated Nov. 21, 2023.

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff may then move for a default

---

[4] On July 3, 2018, Judge Lindsay, who previously oversaw this case, granted attorney David Antwork's motion to withdraw as counsel for defendants Thomas Datre, Jr. and 5 Brothers Farming Corp. Judge Lindsay's Order warned that "a corporate defendant may not proceed *pro se*" and directed defendant to obtain new counsel by August 20, 2018. ECF No. 338 at 2. By that same date, defendant Datre Jr. was directed to "advise the Court if he intends to proceed *pro se*" or to have new counsel file a notice of appearance. Id. Defendant Datre Jr. never responded to Judge Lindsay's Order.
On January 14, 2021, Judge Lindsay granted defendant Plus K Construction's counsel's motion to withdraw, giving defendant thirty days to retain new counsel. ECF No. 443 at 2. The Court permitted counsel for defendant Sparrow Construction Corp. to withdraw on August 17, 2022, directing Sparrow to retain new counsel by September 19, 2022 and warned that a corporate defendant cannot proceed *pro se* in federal court. Order dated Aug. 17, 2022. New counsel never appeared for defendants Plus K nor Sparrow Construction Corp. Defendants Plus K Construction and Sparrow Construction Corp. never responded to Judge Lindsay's Order.

3

judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara et al., 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Finkel, 970 F. Supp. 2d at 119. Even though the well-pleaded allegations are deemed admitted, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC et al. v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010). In other words, "[a]fter default ... it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

CERCLA is an environmental statute enacted in 1980 to address the serious environmental and health risks from industrial pollution. See Burlington Northern and Santa Fe Ry. Co. v. U.S., 556 U.S. 599, 602 (2009). "CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." Price Trucking Corp. v. Norampac Indus., Inc., 748 F.3d 75, 79 (2d Cir. 2014). Liability under CERCLA requires a plaintiff to establish that "(1) the defendant is an

'owner' or is otherwise liable under 42 U.S.C. § 9607(a)(1)—(4); (2) the site is a 'facility' as defined by 42 U.S.C. § 9601(9); (3) there has been a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or the threat; and (5) the costs and response conform to the National Contingency Plan." New York v. Next Millennium Realty, LLC, 160 F. Supp. 3d 485, 504-05 (E.D.N.Y. 2016). Each of these five prima facie elements draw their definitions from CERCLA Section 101 and are discussed below. 42 U.S.C. § 9601. CERCLA liability is "broad" and is construed liberally to effectuate its twin goals of enabling cleanup of hazardous materials and holding responsible parties liable for the costs of clean up. See B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992) ("The Act's broad reach extends liability to all those contributing to—from generation through disposal—the problems caused by hazardous substances.")

## DISCUSSION

**I. Plaintiffs Establish the Elements of a Prima Facie Case under CERCLA.**

    **a. The Defendants are Responsible Parties**

A defendant is liable under CERCLA if they fall into one of four categories of potentially responsible parties. 42 U.S.C. § 9607(a)(1)—(4)[5]; Next Millenium Realty, LLC, 160 F. Supp. at 505. Plaintiffs allege that defendants Datre, Jr., Grabe, and 5 Brothers Farming Corp. are "operators" or "transporters" under CERCLA. ECF No. 1 at ¶¶ 8-12. Plaintiffs allege that the remaining nonresponding defendants are "arrangers" within the meaning of CERCLA. Id. at ¶¶ 13-43.

A party is a "transporter" under Section 107(a)(4) of CERCLA if the party "accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the

---

[5] 42 U.S.C. § 9607(a)(1) states "the owner and operator of a vessel or a facility"; (a)(2) is "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of"; (a)(3) is "any person who by contract, agreement, or otherwise arranged for disposal or treatment…of hazardous substances…"; and (a)(4) is "any person who accepts or accepted any hazardous substances for transport…from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance."

incurrence of response costs, of a hazardous substance…" 42 U.S.C. § 9607(a)(4). Plaintiffs' complaint alleges that defendants Datre, Jr., Grabe, and 5 Brothers Farming Corp. managed and directed the acceptance, hauling, and disposal of hazardous waste from construction sites run by other codefendants to the Roberto Clemente Park in Brentwood, New York. ECF No. 1 at ¶¶ 12, 75-80, 104, 117, 125, 133, 141, 152, 161, 169, 177, 187, 195, 202, and 211.[6] Plaintiffs therefore establish that defendants Datre, Jr., Grabe, and 5 Brothers Farming Corp. are "transporters" for purposes of CERCLA liability.[7]

A party is an "arranger" under Section 107(a)(3) of CERCLA if the party,

> "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3).

Plaintiffs' complaint alleges that the ten remaining nonresponsive defendants "arranged" for the disposal of hazardous substances. Plaintiffs allege that the materials hauled to Roberto Clemente Park contained hazardous construction materials from various sites in New York, ECF No. 1 ¶¶ 62-65, and that defendants contracted or agreed to identify and dispose of said hazardous waste. Plaintiffs' allegations regarding each defendant are specifically set forth as follows: defendant Sam's Rent, Inc. in ECF No. 1 at ¶¶ 21, 137-39, defendant Sukram and Sons, Ltd. in ECF No. 1 at ¶¶ 25, 157-59, defendants Woori Construction, Inc. and Plus K Construction Inc. in ECF No. 1 at ¶¶ 29, 30, 173-75, defendant NY Finest Enterprises, Inc. in ECF No. 1 at ¶¶ 31, 183-85, defendant Luciano's Construction,

---

[6] Plaintiffs' instant motion adjusted the total number of truckloads of waste from the amounts alleged in the complaint. See ECF 532-21 at p. 5, fn. 4.

[7] The Court need not decide whether plaintiffs were operators within the meaning of CERCLA. A party is an operator under Section 107(a)(1) of CERCLA if the party is "the owner and operator of a vessel or a facility." 42 U.S.C. § 9607(a)(1); see Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 135 (2d Cir. 2010) ("The definition of operator is very broad in the CERCLA context") citing United States v. Bestfoods, 524 U.S. 51 (1998). Although CERCLA liability is broad, the text of the statute requires the responsible party to own or operate the facility and plaintiffs' sole citation to Bestfoods may not be sufficient given that Bestfoods addressed whether a subsidiary's acts were sufficient to hold the corporate parent liable as a direct operator. Here, the question of whether these nonresponsive defendants had sufficient management and control over a state-owned park need not be reached as plaintiffs have established that Datre, Jr., Grabe, and 5 Brothers Farming Corp. are liable as transporters.

Inc. in ECF No. 1 at ¶¶ 35, 191-93, defendant Sparrow Construction Corp. in ECF No. 1 at ¶¶ 38, 199-200, defendant Ciano Concrete Corp. in ECF No. 1 at ¶¶ 39, 40, 207-09, and defendants Freedom City Contracting Corp. and Total Structure Services, Inc. in ECF No. 1 at ¶¶ 42, 43, 215-17.[8] See New York v. Town of Clarkstown, 95 F. Supp. 3d 660, 678-79 (S.D.N.Y. 2015) (finding parties liable as arrangers where there were no specific allegations as to an "agreement" or "contract," but parties nonetheless hauled and disposed of waste at the site in question). Plaintiffs therefore establish that these ten nonresponsive defendants are "arrangers" for purposes of CERCLA liability.

### b. The Roberto Clemente Park is a Facility.

CERCLA defines "facility" to mean,

> "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).

Plaintiffs allege that hazardous substances were deposited at the site of Roberto Clemente Park, formerly named Timberline Park at 400 Broadway in Brentwood, New York and therefore establish the "facility" element of CERCLA's prima facie case. ECF No. 1 ¶¶ 67-72.

### c. There was a Release of a Hazardous Substance

CERCLA defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing in the environment…" 42 U.S.C. § 9601(22).[9]

---

[8] Plaintiffs' complaint and plaintiffs' memorandum of law in support of the instant motion set forth the specific addresses where defendants arranged for disposal of the hazardous waste.

[9] The only four exclusions are releases that result "in exposure to persons solely within a workplace…", engine exhaust emissions of vehicles, byproducts of nuclear material and "the normal application of fertilizer." Id. at (A)-(D). None of these exclusions apply here.

CERCLA defines "hazardous substances" as

> "(A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act…(D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act, and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act." 42 U.S.C. § 9601(14).[10]

Plaintiffs allege that "dumping" occurred at the Roberto Clemente Park. Testing of the site after defendants dumped the materials revealed that a number of hazardous chemicals and substances including semi-volatile organic compounds, metals (barium, chromium, copper, lead, nickel, selenium and zinc), pesticides (4,4'-DDD, 4,4'-DDE, 4,4'-DDT and dieldrin), and asbestos-containing materials were found in the soil of the Roberto Clemente Park.[11] ECF No. 1 at ¶¶ 88-94. Plaintiffs allege that "hazardous substances" were "dumped" in the Roberto Clemente Park satisfying the prima facie requirement of a "release of a hazardous substance" under CERCLA. Murtha, 958 F.2d at 1200. ("A substance need only be designated as hazardous under any *one* of the four environmental statutes or under Table 302.4 to be a hazardous substance under CERCLA.").

### d. The Release of Hazardous Substances Caused Plaintiffs to Incur Costs.

CERCLA imposes liability on responsible parties for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national

---

[10] The only exclusions are petroleum, crude oil, and certain natural gases and fuels. 42 U.S.C. § 9601(14). None of these exclusions apply here.

[11] Rather than list every compound that qualifies as a hazardous substance, CERCLA ties its list of toxic pollutants to subsection (14)(D) of Section 307(a)(1) of the Federal Water Pollution Control Act which is codified at 40 C.F.R. § 401.15. This list in the Federal Water Pollution Control Act contains chromium, copper, lead, nickel, selenium and zinc all of which were found in the soil at the Roberto Clemente Park. The Environmental Protection Agency's list of toxic pollutants referenced in CERCLA's definition subsection (14)(B) is codified at Table 302.4 of 40 C.F.R. § 302 and contains nearly all of the compounds alleged in plaintiffs' complaint. Designation as a hazardous substance under any one of these statutes is sufficient for liability under CERCLA. Murtha, 958 F.2d at 1200.

8

contingency plan. 42 U.S.C. § 9607(a)(4)(A). The statute defines "removal" and "remedial action" in 42 U.S.C. § 9601(23) and (24).

Plaintiffs' complaint alleges that the Town of Islip employed Enviroscience Consultants, Inc. to submit a remedial plan for the site to the New York State Department of Environmental Conservation. Upon approval, approximately 39,000 tons of hazardous construction waste were removed from Roberto Clemente Park. ECF No. 1, ¶¶ 96-97. Plaintiffs further allege that the Town of Islip and New York State "incurred response costs to clean up the hazardous substances in the Park, including time expended in the remedial project review and approval process…" ECF No. 1, ¶ 102. Therefore, plaintiffs establish that defendants' release of hazardous substances caused plaintiffs to incur response costs.

   e. **Defendants Cannot Rebut the Presumption that Plaintiffs Costs and Response Conform to the National Contingency Plan.**

Section 107 of CERCLA requires that parties conform any response costs to the National Contingency Plan. 42 U.S.C. § 9607(a)(4)(b). "The National Contingency Plan is essentially the federal government's toxic waste playbook, detailing the steps the government must take to identify, evaluate, and respond to hazardous substances in the environment." Niagara Mohawk Power Corp. v. Chevron, U.S.A., Inc., 596 F.3d 112, 136 (2d Cir. 2010). Courts "presume that actions undertaken by the federal, or a state, government are consistent with the National Contingency Plan." Id. at 137. Plaintiffs allege that the state undertook actions to remediate hazardous substances in Robeto Clemente Park. ECF No. 1, ¶ 102. As defendants have defaulted, they cannot rebut the presumption that these actions were undertaken in compliance with the National Contingency Plan.

   II. **State Law Claims**

Plaintiffs' complaint also alleges defendants are liable for violating their rights based on public nuisance and negligence under New York state law. ECF No. 1, ¶¶ 231-38. In order to establish a prima facie case of public nuisance, "a plaintiff must allege: (1) the existence of a public nuisance; (2) conduct

9

or omissions by a defendant that create, contribute to, or maintain the public nuisance; and (3) particular harm suffered by a plaintiff different in kind from that suffered by the community at large." Hicksville Water District v. Phillips Electronics North America Corporation, No. 17-CV-04442, 2018 WL 1542670 at *7 (E.D.N.Y. Mar. 29, 2018) citing Nat'l Ass'n for the Advancement of Colored People v. Acusport, Inc., 271 F. Supp. 2d 435, 482 (E.D.N.Y. 2003). Importantly, "'the release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right,' thus making such a release 'a public nuisance as a matter of New York law.'" New York v. West Side Corp., 790 F. Supp. 2d 13, 29 (E.D.N.Y. 2011) quoting State of New York v. Shore Realty Corp., 759 F.2d 1032, 1051 (2d Cir. 1985). Therefore, plaintiffs establish their public nuisance claim by alleging that defendants arranged and/or transported hazardous substances and caused their release into Roberto Clemente Park. ECF No. 1, ¶¶ 232-34.

In order to make out a prima facie case of negligence, a plaintiff must allege that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." Farash v. Continental Airlines, Inc., 337 F. App'x. 7, 9 (2d Cir. 2009) (summary order). Plaintiffs allege that defendants had a duty not to endanger the public's health or safety and a duty "to ascertain whether the material that was disposed at the Park contained hazardous substances." ECF No. 1, ¶ 236. Plaintiffs further allege that defendants breached that duty by negligently causing hazardous substances to be disposed of at the Park and as a result of that breach, the public suffered an injury. ECF No. 1, ¶ 236-38. Plaintiffs therefore establish a valid negligence claim against defendants under state law.

**III. Damages**

It is well established that a default constitutes an admission of well-pleaded factual allegations in the complaint, except those relating to damages. Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see also Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well

10

pleaded allegations of liability, it is not considered an admission of damages."). On a motion for a default judgment, the plaintiff has the burden to prove the amount of damages with a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, 109 F.3d at 111). An evidentiary hearing is not required; rather, in determining damages, the Court may rely on detailed affidavits and other documentary evidence. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); see also 69 Bloomingdale, LLC v. Coral Graphics, Inc., No. 20-CV-2613, 2021 WL 7830149 (E.D.N.Y. July 14, 2021) (recommending a default judgment under CERCLA without holding an evidentiary hearing and instead determining damages based on affidavits), Report and Recommendation adopted, No. 20-CV-2613, (E.D.N.Y. Aug. 23, 2021).

Plaintiffs establish a prima facie case under CERCLA and are entitled to "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release." 42 U.S.C. § 9607(a)(4)(C). Here, plaintiffs seek a total of $4,020,959.71.[12] ECF No. 532. This amount reflects $5,217,000, the estimated lost value in closing the park to visitors from May 6, 2014 to July 30, 2017, ECF No. 532-21, plus $153,403.71, the cost of plaintiffs' expert, minus $1,349,444, the total amount paid or to be paid in settlement with the other sixteen defendants.[13] ECF No. 532.

---

[12] The Court notes that the park's owner, Town of Islip, filed its own lawsuit to recover costs specific to its clean-up of the Roberto Clemente Park. See Town of Islip v. Datre, Jr. et al., No.16-CV-2156-MKB-LB (E.D.N.Y. 2016). Therefore the $4,020,959.71 sought by New York State is not for the cost of remediation, but rather the lost value damages to the State's natural resources. See ECF No. 532-21 at p.5-6.

[13] The Court approved twelve settlement agreements between plaintiffs and sixteen defendants. These settlement agreements are as follows: $175,000 settling claims against IEV Trucking Corp., ECF No. 455-1; $175,000 settling claims against Touchstone Homes, LLC, ECF No. 455-2; $58,439 settling claims against Monaco Construction Corp., Alef Construction Inc., and 158 Franklin Ave., LLC, ECF No. 455-4; $90,000 settling claims against Atria Builders, LLC, ECF No. 455-4; $108,505 settling claims against Triton Construction Company, LLC, ECF No. 455-4; $20,000 settling claims against COD Services Corp., ECF No. 455-5; $85,000 settling claims against M & Y Developers Inc., ECF No. 458; $90,000 settling claims against New York Major Construction, Inc., ECF No. 480; $77,500 settling claims against East Coast Drilling NY, Inc., ECF No. 509; $40,000 settling claims against ILE Construction Group, Inc., ECF No. 510; $25,000 settling claims against Cipriano Excavation, Inc., ECF No. 518; $95,000 settling claims against New Empire Builder Corp., ECF No. 519; and $300,000 settling claims against All Island Masonry & Concrete, Inc., ECF No. 530.

### i. The Horsch Study

To estimate damages, plaintiffs hired an expert economist from Industrial Economics, Inc. ("IEc"), Eric Horsch, to conduct a natural resource damages assessment to determine the lost value from the closure of Roberto Clemente Park from May 6, 2014 to July 30, 2017. ECF No. 532-21. This study ("The Horsch Study") is attached to plaintiffs' motion for a default judgment as Exhibit P. ECF No. 532-17. IEc's staff worked on this study for 654 hours over nearly fifteen months from May 15, 2022 through August 31, 2023 and billed plaintiffs a total of $153,403.71 (inclusive of travel and accommodation costs for on-site project work). Id. Mr. Horsch's resume is attached to the study which lists projects he has worked on for federal, state, and tribal entities as well as rulemakings he has advised on and a list of his publications. Id. The cost billed by IEc, $153,403.71, is a "reasonable cost[] of assessing [the] injury, destruction, or loss resulting from [the] release" as contemplated by 42 U.S.C. § 9607(a)(4)(C). Mr. Horsch's extensive experience in the field of natural resource damages assessment, the total hours expended, and the quality of the report all establish a proper basis to reimburse plaintiffs for this cost.

The Horsch Study estimates plaintiffs' total damages to be $5,217,000.[14] ECF No. 532-17. This estimate is derived from the total number of lost recreational user days[15] multiplied by the lost value per day.[16] Id. IEc calculated lost value per day with data collected from vehicle counters, onsite counts, and in person interviews with park visitors. Id. IEc then created a statistical model, that took into consideration the time of year, day of week and the weather and ran the count data through this model.[17] Id. The model included a downward adjustment to account for increased current usage due to expanded

---

[14] The Horsch Study alleges that "the basis for these damages is consistent with the United States Department of the Interior regulations for conducting Natural Resource Damage Assessment under CERCLA." Horsch Study at p.2, fn. 1.

[15] The Horsch Study estimated the total lost user days to be 482,264.

[16] The Horsch Study estimated that the lost value per day was $8.66 which was the average of two methodologies. The total damages calculation included adjustment for inflation using the Consumer Price Index. Id., p. 6, 48.

[17] The Horsch Study took into consideration the fact that the Park's pool had already been scheduled to close for reasons unrelated to the dumping.

sports fields. Id. at p. 12-13.

The total of $4,020,959.71 sought by plaintiffs is a reasonable calculation based on best practices in natural resource damage assessments of the total loss of natural resources suffered by plaintiffs as a result of the closure of Roberto Clemente Park. Therefore, plaintiffs' motion should be granted and a default judgment in the amount of $4,020,959.71 should be entered against the thirteen defendants named herein.[18]

### ii. Joint and Several Liability

Under CERCLA, joint and several liability attaches when the harm alleged is indivisible. Murtha, 958 F.2d at 1197. Although CERCLA is a broad remedial statute that imposes strict liability on potentially responsible parties, joint and several liability is not required in every case and Courts may apportion damages based on degrees of responsibility. Burlington Northern and Santa Fe Ry. Co., 556 U.S. at 613. Apportionment is proper where "there is a reasonable basis for determining the contribution of each cause to a single harm." Id. at 614 citing Restatement (2d) of Torts § 433A(1)(b) (1963-64). Apportionment of each defaulting defendants' harm is not possible in this case. In fact, "CERCLA defendants seeking to avoid joint and several liability bear the burden of proving that a reasonable basis for apportionment exists…courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm." Burlington Northern and Santa Fe Ry. Co., 556 U.S. at 614-15 (quotations and citation omitted); see also R&G Enterprises, Inc. v. Choi, No, 19-CV-11699, 2022 WL 16731449 (E.D.N.Y. May 24, 2022) (finding defendants jointly and severally liable for environmental clean-up costs because they "contributed to

---

[18] Although plaintiffs do not seek this relief, claims brought pursuant to CERCLA Section 107(a) require an award of pre-judgment interest. 42 U.S.C. 9607(a)(4)(D) ("The amounts recoverable under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D).") (emphasis added). Although interest is mandatory, it is calculated from the later date of the date the expenditure occurred or the date payment of a specified amount is demanded in writing. Id. In this case, the later date is the date of this motion, November 20, 2023. Interest is calculated annually and because a full year has not yet passed from the date this motion was filed (demand in writing for a specified amount), no prejudgment interest should be awarded. See State of New York v. Arthur M. Lane & Sons, Inc., No. 06-CV-6650, 2014 WL 12819441 (E.D.N.Y. Feb. 25, 2014).

the contamination of a hazardous waste site."). Therefore, I recommend that the thirteen defendants herein should be held jointly and severally liable for $4,020,959.71 in damages to plaintiffs.

## CONCLUSION

Accordingly, pursuant to Fed. R. Civ. P. 54(b), it is respectfully recommended that plaintiffs' motion should be granted, and the Court should enter a default judgment in favor of plaintiffs against the thirteen defendants[19] in the amount of $4,020,959.71. Plaintiff is hereby ordered to serve a copy of this Report on the thirteen defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: July 18, 2024
Brooklyn, New York

---

[19] Thomas Datre, Jr., Christopher Grabe, 5 Brothers Farming Corp., Sam's Rent, Inc., Sukram and Sons Ltd., Woori Construction, Inc., Plus K Construction, Inc., NY Finest Enterprises, Inc., Luciano's Construction, Inc., Sparrow Construction Corp., Ciano Concrete Corp., Freedom City Contracting Corp., and Total Structure Services, Inc.